ALEXANDER EDGAR v. THE GALVESTON CITY COMPANY.

1. PLEADING—DEMURRER.—Under our system of practice, which permits the plaintiff, after giving a full statement of his cause of action, to add such allegations, pertinent to the cause, as he may think necessary to maintain his suit, a history of the facts out of which plaintiff's rights are supposed to grow, is often given, which may embrace several causes of action, perfectly or imperfectly stated, with prayer for alternative relief. When such a petition is excepted to, in such way as to test the plaintiff's right, under every aspect of his case, to any of the relief prayed for, it is the duty of the court—

    1. To ascertain what combination of facts can be found stated in the petition which will constitute a cause of action, responsive to the prayer for general relief, or to any prayer for special relief.

    2. To sustain the petition as containing a good cause of action, if such a combination of facts can be found stated, though all the other facts stated may be liable to the exceptions taken, and must thenceforth be treated as surplusage.

    3. To sustain the petition only when the facts stated, giving a a cause of action, stand in consistent harmony, when separately and conjointly considered, in connection with other facts stated.

2. APPROVED.—Edgar *v.* The Galveston City Company, 21 Tex., 302.

3. TRESPASS TO TRY TITLE.—The plaintiff's right to bring a second suit in trespass to try title exists, whether the first suit was adjudicated on the verdict of a jury or on demurrer; the law is construed according to its spirit, in order to embrace a case that is wanting in one of the incidents mentioned in the statute, though embodying the substance of what the statute requires, and coming within the object evidently contemplated in its enactment.

4. TRESPASS TO TRY TITLE—PLEADING.—See opinion, for facts stated in a petition which constitute a good cause of action in trespass to try title.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

This was a suit for the league of land on which the city of

Galveston is situated. A first suit by the same party was before this court; and the judgment of the court below, sustaining a demurrer to the petition, was affirmed by this court. (21 Tex., 302.)

This was a second suit, brought March 24, 1859, upon the same allegations of facts, substantially as the first, so far as it sought the recovery of said league of land, which were, in substance, that Edgar, with his family, emigrated to Texas in 1835; settled as a colonist in Austin's colony; was a citizen at the date of the Declaration of Independence; was a soldier in the Texas army; that he was entitled to a league of land as a headright; that in April, 1836, he settled on the east end of Galveston island, and improved about twelve acres of land, with a view to a title to his headright league, including the same, to which he claimed right by virtue of the act of the Consultation, and of the Constitution, and of the general land law of the Republic; that certificate for a league of land was issued to him February 3, 1836, and was approved by the traveling board; that Galveston county was created May 15, 1838; that on the 8th of July, 1839, he placed his certificate in the hands of the surveyor of Galveston county, to be surveyed, to include his said improvements; but owing to the want of courts and the neglect of the surveyor and officers of the Government, but without fault or neglect on his part, no survey was made; that in May, 1840, during his absence from the city, Gail Borden, agent of the Galveston City Company, obtained the possession of his said certificate, by a transfer thereof from his wife and one Walbridge, acting as his agent, for city lots, then of the value of $28,295, a part of which were conveyed to Walbridge, and for the remainder the company gave certificates of sale to his wife; that he had been willing, and a few days before agreed, to convey his certificate and claim to said league of land for the above lots, and, in addition thereto, for a thousand dollars in cash, and two lots with wharf privileges, but he never authorized or ratified the above sale, but rejected and denounced

it, and that no deed had ever been made to Mrs. Edgar or himself; that on account of his poverty, until May, 1842, he could not bring suit, which he then did, to recover said league of land; that the demurrer was sustained to his petition, and in 1858 the Supreme Court affirmed the judgment, and he again brought suit March 24, 1859.

By way of replication to the answer, setting up a legislative grant of said league and labor of land to M. B. Menard, by an act of the Congress of the Republic of Texas, passed December 9, 1836, and a patent to the same, by the President of the Republic, January 25, 1838, the petition alleged that Menard did not pay for the land, and that he and White defrauded the State. The petition contained an independent allegation of ownership of the league of trespass and wrongful possession thereof by defendants, and a prayer for judgment, restoring the property, with damages for its detention.

The petition also prayed, 1st, for the recovery of the league of land; or, 2d, for a good title for the lots conveyed to Walbridge, and for which certificates of sale were given his wife, alleged to be of the present value of $200,000; or, 3d, for damages, to the amount of $200,000; or, 4th, generally, for such judgment as his case entitled him to.

Demurrer to the original and amended petition, setting forth the grounds thereof very fully; also special demurrer to such parts of the petition as sued for alternative special relief, were filed by the defendant and sustained by the court; from which ruling of the court below, this appeal was prosecuted.

*Spencer & Stewart,* for appellant, cited, with reference to the action of the court on the demurrer, Graham *v.* Vining, 1 Tex., 672; Warner *v.* Bailey, 7 Tex., 519; State *v.* Williams, 8 Tex., 264; 10 Peters, 264; 2 Johns., 465; 3 Johns., 366; 11 Johns., 482; 3 Cranch, 229; Williams *v.* Randon, 10 Tex., 77; Zacharie *v.* Bryan, 2 Tex., 276. On the subject of plaintiff's right to his second action, they cited Dangerfield *v.*

Paschal, 20 Tex., 536, and insisted that it was not controlled by Hughes *v.* Lane, 25 Tex 356. On this subject they said: "The case of Dangerfield *v.* Paschal, 20 Tex., interprets the statute according to its spirit, and allows the plaintiff the benefits of his second action, although there was no 'verdict' of the jury. And although the case of Hughes *v.* Lane, 25 Tex., at first blush, might seem to favor an entirely rigid, inflexible, and literal construction of the word 'verdict' in the statute, yet from a close inspection of that case, that it was one in which the plaintiff, by his own gross negligence, had failed to file the record in the Supreme Court in time; and the defendant filed the record and had an affirmance of the judgment; and afterwards, when the plaintiff filed, on writ of error, the record, the cause was dismissed by the Supreme Court, because the plaintiff had neglected to give any notice of appeal; and when we look at the said case, it is manifest that the result of the decision was right, but the dicta and reasoning employed were extra-judicial, and not at all necessary to the decision of the case. And while we recognize the force of the maxim, *stare decisis*, and venerate the judicial fame of the distinguished judge who delivered the opinion in the case of Hughes *v.* Lane, if it is considered as deciding that none other than a judgment upon a verdict entitles a plaintiff to his second action, then we would most respectfully suggest the propriety of its not being regarded as having established a precedent not to be modified."

*Ballinger, Jack & Mott,* for appellee.

I. The appellant has no cause of action to recover the league of land sued for, on which the city of Galveston is situated.

The case of Edgar *v.* The Galveston City Company, 21 Tex., 302, was elaborately argued, and a full and careful decision made on all its points by the court, Chief Justice Hemphill delivering the opinion of the entire bench, including Justices Wheeler and Roberts.

(Counsel, after invoking attention to the syllabus in that case, continued:)

That Galveston Island, not subject to colonial settlement throughout the period that it remained, under the Mexican Government, a military post and place of refuge for fugitives from Mexican invasion during the War of Independence, did not become a part of the public domain, within the purview of any of the contemporaneous laws upon which a soldier of the Republic, taking refuge or even performing service there, could improve the occasion to obtain a preference, a pre-emption, a location upon it of his headright league of land,—is a proposition which we do not think can now be shaken.

But even if this were not so, the power of the sovereign Government, as against this mere locative preference, to withdraw any particular locality from the exercise of the right, or to make disposition or sale of it, is settled, not only between these parties, (in 21 Tex., 302,) but is the settled law of this court, (State *v.* Delesdenier, 7 Tex., 76; Smith *v.* Taylor, 34 Tex., 607, and of all American courts. Wilcox *v.* Jackson, 13 Peters, 498.)

The preference right of plaintiff, even if it once existed, was expressly limited to the period of six months. Says this court: "Had there been no previous title, he should have located within the six months; and title having been issued to Menard, he should, within that time, have filed his certificate and application, otherwise he could not have the shadow of a pretense to contest Menard's title, by virtue of his claim to the preference right, under his improvements. He did not file his certificate for location until seventeen months after the opening of the land office, and had then forfeited his claim to the land, if any he ever had." (21 Tex., 332.)

II. The case is of that class, above all others, in which courts recognize their duty to adhere to a decision which has become a rule of property to a community. The decision of the court, made seventeen years ago, became a rule of prop-

erty to a community then of about three thousand persons, but which has since increased to thirty thousand, spreading over the territory, the title to which was settled.

The court will not overturn a well-considered decision, where valuable rights and interests have become vested under it, although they may consider it to be erroneous. (Ram on Legal Judgment, ed. 1871, 237.)

It is important that, when a question of this kind has become once settled, it should not be disturbed, for it grows into a landmark of property. (Kent., C. J., 6 Johns., 54; Beauregard *v.* City of New Orleans, 18 How., 205.)

III. A first suit, on which a demurrer by the defendant is sustained, does not stop limitation, which continues to run until the second suit. (Hughes *v.* Lane, 25 Tex., 356.)

The plaintiff's petition in this suit was filed March 24, 1859. It alleges his peaceable and continuous possession of part of the land claimed by him from 1836 to the present time. He is not disturbed, and seeks no relief as to that part of the premises; but he shows that the Galveston City Company, in May, 1842, took adverse possession of all the remainder of the league, and has ever since occupied and held it. A lapse of seventeen years would bar any right of action he could have possessed. This ground of demurrer is specially relied upon.

IV. The petition contains an alternative prayer, that the City Company make to plaintiff a title to certain lots, part of which, he says, were conveyed to his agent, Walbridge, and a part to his wife—certificates of purchase having been issued to her, instead of deeds. This took place in 1840.

1st. This part of the case was specially demurred to, because repugnant to the entire claim and conduct of plaintiff. He says, he then and ever since rejected and repudiated the transaction. He cannot now claim this interest. 2d. His wife and Walbridge, or claimants under them, are necessary parties to any such action. 3d. Because, what has become

of the certificates of sale, or lots, is not shown.    4th.  Limitation from the year 1840, to December, 1873.

V.  To the case for two hundred thousand dollars damages, defendant demurs, that no sufficient cause of action is shown, and that the demand, originating, if at all, in 1840, was barred in 1859, or rather in December, 1873, when first sued on.

VI.  The plaintiff alleges that his certificate has been patented; but the action is not for the recovery of the land covered by the patent—the location, present condition, or any facts relating to which are not attempted to be shown. If damages of any kind or amount were suffered by plaintiff to be embraced in his general prayer, they arose in 1840 or 1842, and are barred by limitation, which is set up by demurrer.

VII.  Plaintiff shows that his wife and his agent, Walbridge, received for his league certificate property from the City Company, then of the value of $28,295, now worth $200,000. He cannot sue to revoke this transaction, or affect it in any shape, without restitution of what was received; or, certainly, without much fairer explanation than is given to excuse him from that obligation.

ROBERTS, CHIEF JUSTICE.—In 1840, when the common law was adopted as our fundamental system of jurisprudence, it was provided, that "the proceedings in civil suits shall, as heretofore, be conducted by petition and answer." (Paschal's Dig., art. 979.)    Subsequently it was thought proper to give directions, in framing a petition, requiring that it "shall set forth clearly the names of the parties, and their residence, if known, with a full and clear statement of the cause of action, and such other allegations, pertinent to the cause, as may be deemed necessary to sustain the suit, and also a full statement of the nature of the relief he requests of the court." (Act of 1846, Paschal's Dig., art. 1427.)    Under the guidance of these rules, we often find a petition to contain a historical statement

of the facts, out of which the rights of the plaintiff have grown, which may embrace several causes of action, either perfectly or imperfectly stated, resulting in a prayer for several alternative reliefs. The defendant, being also allowed in his answer "to plead as many several matters, whether of law or of fact, as he shall think necessary to his defense" to such a petition, will most likely except, in such way as to test the legal competency of every fact and combination of facts, to produce the varied and numerous results prayed specially for in the petition, or which may be properly attained under the general prayer for relief, which is usually inserted at the close of the petition. Upon a hearing of such exceptions, the court is required to ascertain what combination of facts can be found stated in the petition and in its amendments, which will constitute a cause of action responsive to any of the special reliefs prayed for, or to the general relief in the prayer of the petition. If such a combination of facts stated can be found, the court must sustain the petition as containing a good cause of action, although three fourths or nine tenths of its allegations are liable to the exceptions taken to them, and must thenceforth be treated as useless surplusage. It is not to be understood, however, that the statements of the facts can be distorted from their true meaning and purpose, as used in the petition, and abstracted from their proper connections with other facts stated, to accomplish this object; but, on the contrary, they must be of such a character as to stand in consistent harmony when separately and conjointly considered. (Whitlock v. Castro, 22 Tex., 113; 30 Tex., 21.)

Such is, practically, our system of pleading, and such a case is the one now under consideration.

The objects of this suit, as indicated by the alternative reliefs prayed for, are, the recovery of a league and labor of land, embracing the Galveston city league, upon the eastern end of Galveston island, with damages; or, the headright certificate of Edgar, located upon said land previous to 1842; or, the alleged value of said certificate, by reason of its con-

version at that date; or, a title to the lots, alleged to have been fraudulently traded to Mrs. Edgar for said certificate at said time.

The exceptions, and especially those which set up the statutes of limitation, were taken to the facts of the petition, upon which all of these reliefs were predicated, except the first, which was the recovery of the land. And they were well taken as to those facts, relating to the recovery of the land, by reason of Edgar's immigration in 1835; his selection and settlement in April, 1836; his subsequent improvements and the filing of his headright certificate upon it in July, 1839. That was settled in the decision of the previous suit by this court, and we have no desire to reconsider the positions taken in the elaborate opinion of Chief Justice Hemphill, then delivered. (Edgar *v.* The Galveston City Co., 21 Tex., 327.)

In the original petition, we find the following: "And your petitioner further shows unto your honor, that besides the above and foregoing, he is otherwise the legal owner in fee simple of the league and labor of land lying and being situate on the east end of Galveston island, in the county of Galveston, commonly known as the city league, and on which is located the city of Galveston, and that the said league and labor of land aforesaid, being so in the lawful possession of your petitioner, and he the owner thereof, the said defendants did, on the first day of May, 1842, with force and arms, enter thereupon, and dispossess your petitioner, and have ever since forcibly held, and do now forcibly hold and detain the same, and refuse to yield or surrender possession thereof to your petitioner; all of which is to the damage of your petitioner of one hundred thousand dollars."

In the amended petition, we find the following description of the land sued for: "The league and labor of land mentioned in the petition, and in this amended petition, is the same which defendants claim, and is commonly called by the name of Galveston city league and labor, and begins at the most eastern point or eastern extremity of Galveston island,

and thence runs in a westwardly and southwestwardly direction, with the course of the gulf beach, to the southeast corner of what is called lot No. 1, in section No. 1, according to the survey of Galveston island, known as Trimble and Lindsay's survey; thence with the east boundary line of said section No. 1, in a northerly direction, across the island to the northeast corner of lot No. 10, in said section No. 1; thence in an easterly direction, following the meanderings of Galveston bay, to the place of beginning, containing one league and labor of land."

Amongst the numerous prayers, we find the following prayer, in the original petition:

"And your petitioner prays for the judgment and writ of your honorable court, to restore him to the possession of said league and labor of land, and for all damages for the detention of said property, and costs."

These parts of the petition exhibit a good cause of action, and must be so held, unless the petition contains other allegations that constitute a defense to it. In searching through the various allegations of the petition and amended petition, to ascertain whether or not plaintiff has stated facts enough to make out a defense to his action in favor of defendants, a distinction must be made between what is stated in the nature of a replication to and by way of the denial of the validity of the defenses set up in the answers of the defendants, and what is stated by way of explanation, incidentally, of his cause of action, which, when pertinent, is permitted by the statute that has been quoted.

Plaintiff's allegations of defendant's possession of the land since 1842, holding under a title from the Government, through Menard, is thus qualified by the allegations, that said title is fraudulent and void in the replication to defendant's answer, and also by his allegation that he has been in the peaceable possession of said land during that whole time, and he fails to show any other facts that might be necessary to

give the defendants a title to the land, under any section of the statute of limitations.

So, too, the plaintiff admits that this is a second suit for the same land, and that a judgment final was rendered against him in favor of the defendants in the former suit. But these facts are admitted, with the qualification involved in the allegations made in the same connection, that the former suit was to recover the same land, and contained similar allegations in many respects, and that upon exceptions thereto, judgment was rendered against him in favor of the defendants, which judgment was affirmed by the Supreme Court, and that in less than twelve months thereafter, this suit was brought by him against the same defendants to recover the same land.

If the statute of our State does not allow a second suit upon the same cause of action, under the circumstances thus set out by plaintiff, what he has stated amounts to the admission of a bar to his action by a former recovery, and would prevent his pleading, taken all together, from presenting a good cause of action.

We are of opinion, however, as stated by Justice Lipscomb, that the object of the statute was to allow the plaintiff to have two trials upon the merits. (Dangerfield *v.* Paschal, 20 Tex., 541.) In the case just cited, the judgment in the first suit was not rendered upon the verdict of a jury as literally prescribed by the statute, but by the finding of the court upon a demurrer to the evidence; still the Supreme Court held, that the plaintiff was none the less entitled to bring a second suit within twelve months, as though the judgment had been rendered upon the verdict of the jury.

Certainly a judgment of the court, founded on the verdict of the jury, is as complete a bar in ordinary cases, on the principle of *res judicata,* as a judgment on demurrer can be. One is for the lack of sufficient facts proved, and the other for the lack of sufficient facts alleged, and both are equally judgments upon the merits of the case, as presented on the trial.

The law is construed, according to its spirit, in order to embrace a case that is wanting in one of the incidents mentioned in the statute, though embodying the substance of what the statute requires, and coming within the object evidently contemplated in the passage of the act. (Paschal's Dig,, arts. 5298, 5299.)

In the action of ejectment, any number of suits might be brought in succession between substantially the same parties and for the same land. Our statute, in abolishing the fictions of said action, and substituting trespass as the form of action for the trial of title to land, gave the plaintiff two suits, one after the other, and provided that he should not be precluded and barred by the first one, although he had had a trial of his right, in the fullest and most complete mode known to the law, by a verdict of the jury, and judgment of the court thereon against him. It is not reasonable that it ever could have been contemplated by the Legislature, in passing this law, that he should be precluded and barred by a less full and less complete mode of trial of his right by a judgment of the court against him upon demurrer to the pleadings, or to the evidence, or upon submitting the case to the court upon the law and facts, without a jury.

We are of opinion, therefore, that the petition contains a good cause of action for the recovery of the league and labor of land, with damages for the detention and holding of the same as prayed for. The alternative claim for a title to certain lots, is not presented with appropriate averments, showing any right, with that fullness and certainty that would justify a recovery. The alternative claim for the certificate itself, as personal property, is defeated by plaintiff's own allegation, that it has been merged into a patent. The alternative claim for damages, for the wrongful conversion of the certificate, as shown in the petition, has long since been barred.

The exceptions of the defendants were well taken to these alternative claims, as well as to the title to land by mere

immigration, selection, settlement, improvement, and filing of certificate on the land, as before indicated, which leaves standing, as a good cause of action, the formal action of trespass for the land, the constituents of which have been copied in this opinion. It is probable that they were inserted in the petition, to secure a trial by a jury, and to prevent this suit 'from being dismissed upon exceptions, as the former suit was.

If it be true that the plaintiff has a title to the league and labor of land, as he alleges, "besides the above and foregoing"—meaning thereby the one dependent upon the facts specially set forth in his historical statement—it is proper that he should have an opportunity to submit it to a jury of the country, under the direction of the court, as in other cases.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.