## Mary L. Johnson v. J. L. Dyer, Jr.

Decided November 9, 1898.

**1. Innocent Purchaser—Vendor's Lien—Inquiry.**

See circumstances under which a purchaser was held to have exercised due diligence in way of inquiry and to be protected against the express reservation of a vendor's lien in unrecorded purchase money notes, the recorded deed showing the existence of the notes but not the express reservation of lien.

**2. Same—Registration—Limitation.**

A sold land to B, who gave notes for purchase money—the deed so reciting—the notes, but not the deed, showing the retention of an express lien. C, purchasing from B, assumed to pay these notes as part of the consideration, and afterwards conveyed to D, who in turn assumed, and later paid them, taking a release from A; but neither the deed to D, nor the notes, nor the release, were recorded. E, an innocent purchaser, then bought the land from C, who had forgotten the fact of his sale to D, and represented that the notes had been paid. Held, that E was pro-

tected against the legal title acquired by D through the conveyance from C and the release from A, because not recorded,—and against the lien for the notes because barred by limitation.

APPEAL from McLennan. Tried below before Hon. SAM. R. SCOTT.

*Alexander & Atkinson,* for appellant.

*Henry & Stribling,* for appellee.

COLLARD, ASSOCIATE JUSTICE.—This is a suit brought by appellee, John L. Dyer, Jr., February 17, 1898, against Mrs. Mary L. Johnson, to recover lots 5, 6, and 7 in block 4 of the Walton subdivision of the Burney homestead, in Waco, Texas.

Plaintiff alleged that defendant was claiming the land under a deed of date the 4th day of December, 1890, by John L. Dyer, Sr., to Mary L. Johnson, which was filed for record the 4th day of January, 1898, of which plaintiff had no notice at the time he acquired the lots.

Mrs. Johnson answered by plea of not guilty, and specially asked that John L. Dyer, Sr., her vendor, be required to defend her title as her warrantor.

Further, that when she purchased the property, on the 4th day of December, 1890, it was incumbered by two vendor's lien promissory notes for $327.50 each, executed by E. C. Hatton to Thomas B. Dockery on January 16, 1890, which fell due respectively January 16, 1891 and 1892, which notes she assumed to pay; that these notes are recited in the conveyance of Thomas B. Dockery to E. C. Hatton of same date as the notes, and also recited in the conveyance of E. C. Hatton to John L. Dyer, Sr., the latter assuming to pay the same; of all which John L. Dyer, Jr., had notice at the time of his purchase from John L. Dyer, Sr.

Mrs. Johnson's answer also shows that she paid off and discharged the notes at maturity; and about the 18th day of January, 1892, said Dockery executed a release to her, conveying to her all the legal and equitable title he had in the land by virtue of the lien; that she became subrogated to all the rights of Dockery in the land; that she is such lienholder in possession, and that she be so adjudged, and that plaintiff be required to pay off the lien before he recover the land.

Plaintiff replied that the notes were barred by statute of limitations of four years; that the notes were a part of the purchase price defendant agreed to pay for the lots, and she could not be subrogated to the lien in favor of Dockery. He also replied that he purchased the lots in good faith; denied that he had any notice that the notes were unpaid; that at the time he purchased the property, he made diligent inquiry, and was informed and led to believe that the notes had been paid off and discharged.

The case was tried by the judge without a jury and resulted in judgment for plaintiff for the lots, and against John L. Dyer, Sr., in favor

of Mrs. Johnson for amount of notes, principal, interest, and attorney's fees, $1894, and costs. The defendant, Mrs. Johnson, has appealed.

We find the facts established on the trial as follows:

The lots in suit were conveyed January 16, 1890, by Thomas B. Dockery to Ed. C. Hatton, by deed duly recorded on the same day, reciting consideration as cash $450, "and the further consideration of two promissory notes, bearing even date herewith, for the sum of $327.50 each, due and payable in one and two years, and bearing interest at the rate of 10 per cent per annum from date. Said notes are executed in part payment for the hereinafter described piece of land." The notes themselves were read in evidence, and each recited: "This note is given in part payment of the purchase money of lots 7, 6, and 5, of block 4, Walton's subdivision to the city of Waco, this day deeded to me by Thomas B. Dockery, of Waco, Texas, and for the payment hereof, together with the interest hereon, according to the tenor and reading hereof, a vendor's lien is hereby acknowledged."

Defendant read in evidence a warranty deed of Ed. C. Hatton to John L. Dyer, Sr., dated August 28, 1890, conveying the lots to Dyer, Sr., in which deed, John L. Dyer, Sr., assumed the payment of the two notes mentioned in the conveyance of Dockery to Hatton. On the 4th day of December, 1890, John L. Dyer, Sr., conveyed the lots to defendant, Mrs. Johnson, by warranty deed of that date, filed for record in McLennan County the 4th day of January, 1898, for a cash consideration of $1237, which deed also recited, "and the further consideration that the said Mary L. Johnson assumes the payment of and pays off two certain promissory notes, dated January 16, 1890, given by Ed. Hatton to Thomas B. Dockery, for $327.50 each, due January 16, 1891, and January 16, 1892, with interest from date thereof at 10 per cent per annum. Said Johnson assumes the payment of the accruing interest on said notes, $57.85— said notes being further described in a deed recorded in Book 70, page 376, and which reference to Book 70, page 376, is record volume and page of a deed from Dockery to Hatton."

On the 18th of January, 1892, Thomas B. Dockery executed a release to Mrs. Mary L. Johnson of all claim in him by virtue of the vendor's lien notes, reciting that she had that day paid the notes to him. The release was not recorded.

It was shown that W. R. Dunnica, acting for Mrs. Johnson, paid to Dockery the amount due on the notes, and they were delivered to him, as was the release.

December 17, 1897, John L. Dyer, Sr., conveyed the lots to John L. Dyer, Jr., by warranty deed of that date, for a cash consideration of $1200, paid at the time, which deed was duly filed for record in McLennan County on the day of its date. John L. Dyer, Sr., is the father of John L. Dyer, Jr. The two vendor's lien notes were not recorded.

The trial judge filed conclusions of fact and law, and found the facts as above stated, and then upon evidence sufficient to support the findings also found the following facts, which are true:

"I further find that before the said John L. Dyer, Jr., purchased the lots in controversy herein from John L. Dyer, Sr., on December 17, 1897, that he employed one R. S. Vaughan, an abstractor, of Waco, Texas, to examine the title from the State down to December 17, 1897, to said lots, and tell him, John L. Dyer, Jr., the condition thereof. I find that the said Vaughan made the said examination and reported to John L. Dyer, Jr., that the title was perfect except as to the two notes given by Ed. C. Hatton to Thomas B. Dockery, being two notes of $327.50 each, and a deed of trust for $250 given by John L. Dyer, Sr., to W. W. Seley, dated August 25, 1897. I further find that John L. Dyer, Jr., had said Vaughan to take a car and go and look at the lots in controversy and see if anyone was in possession thereof, and that the said Vaughan did go and examine the said lots and came back and reported to the said John L. Dyer, Jr., that he found the premises inclosed by fence, that same was in bad repair, being down in several places, and that a road crossed the lots, and that they appeared to be vacant and unoccupied city lots; and that the said Vaughan made inquiries of persons living adjacent to said lots in controversy herein, and was told by them that the lots had been lying there for six or seven years, and did not know who owned them. I further find that thereupon said Vaughan made an abstract for the said John L. Dyer, Jr., to the said property on December 17, 1897, and which abstract was completed and delivered to the said John L. Dyer, Jr., about 2:25 p. m. on December 17, 1897, and that upon delivery of the abstract to John L. Dyer, Jr., by said Vaughan, and after an examination thereof by the said John L. Dyer, Jr., the transaction between the said John L. Dyer, Sr., and John L. Dyer, Jr., was closed, by the said John L. Dyer, Jr., paying to the said John L. Dyer, Sr., $1200 for the property in controversy herein, and out of which sum so paid to John L. Dyer, Sr., the note of $250 held by W. W. Seley, secured by a deed of trust upon the property in controversy, was paid off. I find that before said payment and before the deed was made to John L. Dyer, Jr., and while Vaughan was gone to inquire into the possession of said lots, John L. Dyer, Jr., asked John L. Dyer, Sr., in reference to said notes given by Ed. C. Hatton to Thomas B. Dockery, as to whether same had been paid off, and was told by said John L. Dyer, Sr., that they had been paid off; that the said John L. Dyer, Sr., made a search among his receipts to find the notes, but failed to do so, and stated to the said John L. Dyer, Jr., that he was of the opinion, between himself and Ed. C. Hatton, Hatton had paid off said notes, and that same were in his possession; that the said John L. Dyer, Jr., and the said John L. Dyer, Sr., called upon the said Hatton and were told by Hatton that he did not have the notes in his possession, and that probably John L. Dyer, Sr., was mistaken about he, Hatton, having paid same off, but that he, Hatton, remembered something about them, and it was his recollection that John L. Dyer, Sr., had paid same off; and said Hatton stated to them that he was sure said notes had been paid off, as Thomas B. Dockery had several years previously told him that the notes had been paid off.

"I further find that on August 25, 1897, John L. Dyer, Sr., was desirous of borrowing some money on said lots, being the lots in controversy herein, and requested W. W. Seley to loan him $250 for ninety days, and offered him a deed of trust upon the property herein involved to secure same, and on this date Seley went to John L. Dyer, Jr., and requested him to examine the title to said property as far back as seven or eight years, and if the title was good to the property to then prepare a deed of trust upon the property in controversy herein. I find that John L. Dyer, Jr., did make an examination of the title as far back as January 30, 1888 and in his examination he found that on January 16, 1890, Thomas B. Dockery conveyed to Ed. C. Hatton the property in controversy herein, in which said conveyance from Dockery to Hatton, as part of the purchase money for said property so conveyed to him, and as part of the consideration, was mentioned two notes of $327.50 each, due in one and two years with 10 per cent interest from date thereof; that no vendor's lien was specially retained in said deed to secure the payment of said two notes. And, in said examination so made by said John L. Dyer, Jr., for W. W. Seley, he found that Hatton had conveyed by warranty deed the property in controversy herein, on August 28, 1890, to John L. Dyer, Sr., and in which conveyance the said John L. Dyer, Sr., assumed the payment of said two notes given by the said Hatton to the said Dockery. That John L. Dyer, Jr., in said investigation of said title found no release of the two notes for $327.50 each on record in McLennan County, Texas, and the said John L. Dyer, Jr., reported to W. W. Seley that the title to said property, being the property in controversy herein, appeared, as far back as 1888, to be good, except the two notes of $327.50 each, which had not been released. Upon receipt of this information the said Seley requested the said John L. Dyer, Jr., to call upon the said Dockery and Hatton in reference to the notes; that he, the said John L. Dyer, Jr., called at Dockery's office and found him absent from Waco; that he went to see said Hatton, the payor in said notes, and was told by him that Dockery had told him three or four years previous that said notes had been paid off and discharged. I also find that the said John L. Dyer, Jr., asked the said John L. Dyer, Sr., if the said notes had been paid off, and was assured that they had; that all of said information was reported by said John L. Dyer, Jr., to the said Seley; also that the said notes appeared to be barred by the statute of limitation, and that no vendor's lien had been specially retained in the deed to secure the payment thereof, and upon receipt of this information Seley made the loan upon said lots.

"9. I also find that during the year 1897 Thomas B. Dockery was absent from Waco on a great many occasions, at times being gone for three or four weeks; that at the time the loan was made by Seley and at the time that John L. Dyer, Jr., purchased the lots in controversy herein, the said Thomas B. Dockery was absent from Waco.

"10. I further find that one W. R. Dunnica was the agent for the defendant, Mary L. Johnson, and that he as agent for her paid off the two notes of $327.50 each to Thomas B. Dockery; that he took a release from

the said Dockery; that he, as agent for Mrs. Mary L. Johnson, the defendant herein, had the deed in his possession from the said John L. Dyer, Sr., and that said deed or the release had been placed of record in McLennan County, Texas, at the time John L. Dyer, Jr., purchased the property in controversy; that the release has never been placed of record; that the said deed was filed for record by the said W. R. Dunnica on January 4, 1898. I further find that the defendant Mary L. Johnson is the widow of T. Johnson, deceased, and was frequently called Mrs. T. Johnson, and the release was to her.

"11. I further find that shortly after December 17, 1897, John L. Dyer, Jr., called upon Thomas B. Dockery in reference to securing a release to the two notes given by Ed. C. Hatton to him, and was told by Dockery that he did not remember whether same had been transferred to someone else or had been paid off, but his memory was that same had been paid off and released. I find that John L. Dyer, Jr., spoke to said Dockery several times about securing a release of said two notes, and on the 2d day of January, 1898, Dockery told him that he did not remember anything about any transaction in reference to the notes, but would look in the notary public book at the Waco State Bank and see if any memorandum appeared in said notary public record of any transaction or release to said notes; that said Dockery did go to a notary public record of the Waco State Bank and found that he had released the lots to Mrs. T. Johnson; that Dockery saw W. R. Dunnica, agent for Mrs. Johnson, the defendant herein, and called his attention to the matter, and the said Dunnica told him, Dockery, that Mrs. T. Johnson had a deed from John L. Dyer, Sr., and went to his safe and secured the deed and release and showed them to the said Dockery, stating that he was going immediately to file the deed for record. I further find that Thomas B. Dockery knew nothing of the transaction in reference to the paying off of said notes and the execution of the release, and could not call to mind anything concerning same until he had examined the notary public book at the Waco State Bank.

"12. I further find that it was agreed in this suit that the common source of title was in John L. Dyer, Sr., except so far as it was modified in the deed in evidence from Dockery to Hatton and the deed in evidence from Hatton to John L. Dyer, Sr.

"13. I further find that John L. Dyer, Sr., sold the lots in controversy to Mrs. Mary L. Johnson on December 4, 1890, for the cash consideration of $1237 and the further consideration of her assumption of said two notes of $327.50 each; that at the time said John L. Dyer, Sr., conveyed the property to John L. Dyer, Jr., he had no knowledge that he had conveyed the property to Mrs. Mary L. Johnson; that the said John L. Dyer, Jr., questioned the said John L. Dyer, Sr., about the title in reference to said notes of $327.50 each, and was given every assurance by the said John L. Dyer, Sr., that the said notes had been paid off and the title was good.

"14.   I further find that, at the time John L. Dyer, Jr., purchased the lots in controversy herein from John L. Dyer, Sr., he had no notice of said notes of $327.50 each, so given by the said Hatton to the said Dockery, otherwise than as appeared by the recitation of said notes in the deed from Dockery to Hatton and from Hatton to John L. Dyer, Sr., and that no notice was afforded by the recitations in the deed from Dockery to Hatton and from the deed from Hatton to John L. Dyer, Sr., that said notes acknowledged the retention of a vendor's lien, and said notes were not of record, and the said John L. Dyer, Jr., had never seen the notes before he purchased the lots from John L. Dyer, Sr., and had no constructive or actual notice of the contents of said notes, and that the only notice whatsoever of said notes was in the recitation in the deed from Dockery to Hatton and from Hatton to John L. Dyer, Sr., and that the recitations in said deed concerning said notes in said deed were full and complete and gave the date of the notes, the amount, when due and the rate of interest, and there was nothing in said deed to denote that said notes were secured by the retention of an express vendor's lien."

There is evidently a mistake in the conclusions of fact filed by the court.   In one place he says, "and that said deed or release had been placed of record in McLennan County, Texas, at the time John L. Dyer, Jr., purchased the property in controversy."   Evidently the court intended to say that the deed or release had *not* been placed of record, for such is the fact, and further findings make clear the real finding of the court.

It appears from the testimony of John L. Dyer, Sr., that he had forgotten that he at any time owned the lots, or that he had sold them to Mrs. Johnson.   He testified: "I sold the land in controversy to Mrs. Johnson, as shown by my deed which has been placed in evidence, and I had forgotten that fact, and it had been utterly obliterated from my memory.   In fact, I had forgotten all about the lots until James I. Moore was making up a block book of the city of Waco; he called my attention to the fact that I owned the lots.   I did not believe it.   In fact, I had forgotten all about ever purchasing the lots.   Moore having told me that I bought the same from Hatton, I went to see Hatton, and he told me that he sold same to me.   I thereupon requested an abstractor at Waco to see if I was really the owner and report the status thereof, and he stated the title to the property was in me; that nothing had been done in reference to same since my purchase from Hatton.   After my purchase from Hatton I forgot the transaction, and the lots had wholly escaped my memory. I had forgotten that I owned them until Moore called my attention to the matter.   In August, 1897, I was needing some money.   Being told by the abstractor that the title to the property was in me, and having no knowledge or recollection that I conveyed it to Mrs. Johnson, I gave W. W. Seley a deed of trust upon it for $250.   December 17, 1897, I sold and conveyed to my son, John L. Dyer, Jr., the lots in controversy for the cash consideration of $1200 and made a deed to the property, and I would not have done so had I any knowledge I had sold the same to Mrs.

Johnson. When I mentioned selling the property to my son, John L. Dyer, Jr., he questioned me very closely about the title, and I gave him every assurance that the title was good, and I told him I was positive that the notes mentioned in the deed from Dockery to Hatton had long since been paid off; and further to assure him, he and myself went to see Ed. Hatton, who has recently died, and Hatton stated that Dockery told him the notes had been paid off, and that he, Hatton, was sure they had been paid off, for he had never been called on to pay the same, and had not heard anything of them. I also stated to my son, John L. Dyer, Jr., that I had either paid the notes myself, or else Ed. Hatton had paid same off. In conversation with him I told him that in some arrangement between Hatton and myself that Ed. was to pay the notes off, and thinking Hatton might remember something about such a transaction, I called upon him with my son. Hatton in the conversation stated that he thought I was mistaken about having arranged with him to pay off the notes, and that he did not remember of having done so. I then told my son if Hatton had not paid them off, as I supposed he had, then I paid them myself, and it was upon my representation that the notes had been paid off that my son purchased the property."

The deed of Dyer to Dyer was dated December 17, 1897. Dockery was absent from Waco on a great many occasions during the year 1897, sometimes two or three weeks at a time, and he was absent on the 17th day of December, 1897. Moore inquired of him about the Hatton note to Dockery prior to that date; but after his return to Waco, after the 17th of December, 1897, the younger Dyer came to him and asked him about the payment of the notes, and he stated that he thought the notes had been paid off. The elder Dyer had stated to his son that he thought he had paid them off. Dockery told the younger Dyer that he did not recollect whether the notes had been transferred to someone else or had been paid off, and he, Dockery, had released, but his memory was that they had been paid off and he had released. Dockery says: "He spoke to me about it two or three times about the 2d of January. I told him I would look at the notary public book at the Waco State Bank and see if anything appeared in said notary public book to indicate transfer or release." He states that he did examine the book and found that he had released the lots to the defendant, Mrs. Johnson, who had paid off the notes, and he informed plaintiff of this about the 4th of January, 1898. This was a fact. W. R. Dunnica, Mrs. Johnson's agent, had the release in his possession, and the deed of Dyer, Sr., to Mrs. Johnson, both then unrecorded. Dunnica then had the deed recorded, but the release was not recorded at any time. These inquiries to Dockery were made after Dyer, Jr., had purchased the lots and paid for them. No one was shown to be in possession of the lots.

*Opinion.*—The court below concluded from the facts that Dyer, Jr., the plaintiff, was an innocent purchaser in good faith for a valuable con-

sideration without notice of defendant's rights, and that he used all the diligence required of him by inquiry to ascertain the status of the title to the property; and that the notes were barred by limitation at the time of plaintiff's purchase, and he had the right to presume that they had been paid. The court decided several other questions in favor of plaintiff, holding his title valid as against Mrs. Johnson and unaffected by the lien of the notes she had paid off.

We agree with the court below that plaintiff is shown to be an innocent purchaser of the lots and should be protected. Plaintiff prosecuted inquiry as to the Hatton notes to Dockery, until he ascertained that they had been paid. He was not bound to know that Mrs. Johnson was the person who paid the notes and acquired thereby the rights she asserts. Such rights were shown by her deed from John L. Dyer, Sr., and the release executed to her by Dockery. Plaintiff knew nothing of any of these facts, and no fact that should have put him upon inquiry. If he had seen Dockery before his purchase, and Dockery had informed him that the notes had been paid, that information would not put him on inquiry of the fact that *Mrs. Johnson* had paid them, having purchased the lots from John L. Dyer, Sr., and securing a release from Dockery. These rights were evidenced by writings which are subject to the laws of registration, and persons dealing with the apparent owner, as shown by the records, in good faith, should be protected. The plaintiff was affected with constructive notice of the facts recited in the deed of Dockery to Hatton and of Hatton to Dyer, Sr., that notes had been given for part of the purchase price of the lots, and that Dyer, Sr., had assumed payment of the notes. No lien was expressly retained in the deeds, and it appeared that the notes were barred by the statute of limitation of four years at the time plaintiff purchased the land. In such case, he purchased the land free from the lien expressed in the notes, of which he had no actual or constructive notice. By the facts brought home to the purchaser by the record of the deeds the lien expressed in the notes of which he had no notice was lost by the statute of limitation, even had he known that Mrs. Johnson had become the owner of the notes, to pay which there was but an implied lien by the deed on the lots. The court below correctly so held. It is a settled rule in this State that when a vendor's lien is not expressed in a deed to land, and the note has become barred, the lien can not be enforced against the land. Rindge v. Oliphint, 62 Texas, 685; Hale v. Baker & Rice, 60 Texas, 217; 23 Texas, 562; 49 Texas, 3.

Now, reviewing all the facts,—that the plaintiff made inquiry as to the notes to ascertain if they were still outstanding; the information he received that they had been paid off, and that he was told that Dockery had so stated; coupled with the period of time that had elapsed after maturity of the notes,—we can not say the lower court was in error in holding that plaintiff exercised sufficient diligence to show good faith and to relieve the lots in his hands of the lien, even if the lien could be enforced, though apparently barred. The rule adopted by the Supreme

Court in Hill v. Moore, 85 Texas, 347, as to diligence required of one who has been put upon inquiry, has been satisfied.

Mrs. Johnson was not shown to be in possession of the lots, and no question is raised of what her rights to defend her possession would be.

What has been said in the foregoing decides all material questions in favor of appellee. From the findings of fact by the court below, we conclude that the judgment should be affirmed, and it is unnecessary to discuss other questions.

*Affirmed.*

Writ of error refused.