### W. C. BELCHER LAND MORTGAGE CO. v. TAYLOR et al. (No. 5405.)†

(Court of Civil Appeals of Texas. Austin. Nov. 11, 1914. Rehearing Denied Feb. 20, 1915.)

1. LIMITATION OF ACTIONS ☞167—BAR OF DEBT AS BAR OF SECURITY—VENDOR'S LIEN.

Where a lien on land to secure purchase-money notes is only equitable, not expressed in the deed to the land or in the notes, it is barred when such notes are barred by limitation.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 651–653; Dec. Dig. ☞ 167.]

2. SUBROGATION ☞23 — ADVANCES TO DISCHARGE INCUMBRANCE.

Where defendant advanced the owner money to pay the original purchase-money notes, he thereby acquired an equitable lien upon the land which he could assert within any period before the extinction of the lien by limitation running on the debt.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 60–66; Dec. Dig. ☞23.]

3. HUSBAND AND WIFE ☞273—COMMUNITY PROPERTY — RIGHTS OF SURVIVOR — MORTGAGE TO PAY PURCHASE MONEY.

Where a husband bought land and executed purchase-money notes therefor, at his death the debt was owed by the community estate, not by his wife personally, and she, as survivor of such estate, could sell or mortgage the property to pay or secure the debt, but upon remarriage her power as survivor ceased.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. ☞ 273.]

4. HUSBAND AND WIFE ☞273—COMMUNITY PROPERTY — RIGHTS OF SURVIVOR — MORTGAGE TO PAY PURCHASE-MONEY NOTES — RIGHTS OF CHILDREN.

Where a purchaser gave notes for land and died, his widow, as survivor of the community, was tenant in common of the land with her minor children, and had a right to take measures to preserve the property, but, as against the children, she had no power to mortgage the land for a sum greater than the original debt.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. ☞ 273.]

5. MORTGAGES ☞372—SALE UNDER A VOID DEED OF TRUST—EFFECT.

A trustee's deed was void and conveyed no title when the sale was under a deed of trust which the mortgagor had no authority to execute, as against her minor children, to secure payment of money borrowed to discharge the original purchase-money notes given for the land by her husband.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1102, 1103, 1105–1117; Dec. Dig. ☞372.]

6. HUSBAND AND WIFE ☞154—MORTGAGE BY WIFE—PERSONAL LIABILITY—EFFECT OF EXTENSIONS OF PAYMENT.

Where a married woman mortgaged land jointly with her husband, joining in the execution of the note, she did not thereby become personally liable for the debt, and if, after her husband's death, she secured extensions of time for payment so long as to bar the husband's debt by limitation, such extensions did not affect her personal liability for the debt, and so had no vigor to render valid, as to her or her minor children, the sale of the mortgaged land.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 604; Dec. Dig. ☞154.]

7. MORTGAGES ☞350—PLACE OF SALE—DEED OF TRUST—STATUTE.

Under statute of 1889 requiring that sales under deeds of trust be made in the county where the land is situated unless otherwise stipulated, a new promise by a widow to pay notes secured by joint deed of trust of herself and husband did not authorize the sale, except as directed by statute, although the deed of trust contained such an authorization.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1048; Dec. Dig. ☞350.]

8. ACKNOWLEDGMENT ☞20—WHO MAY TAKE —MARRIED WOMAN—DEED OF TRUST—INTEREST OF OFFICER.

Where a married woman executed a mortgage upon her homestead jointly with her husband, and acknowledged the same before a notary, who was financially interested in the consummation of the transaction by way of commission from the lender, the mortgage is void; knowledge of the facts on the part of the lender being imputed to him, as a matter of law, from the knowledge of his agent.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 104–111; Dec. Dig. ☞ 20.]

9. ACKNOWLEDGMENT ☞62—INTERESTED NOTARY—SUFFICIENCY OF EVIDENCE.

Evidence *held* to show that an agent had knowledge that the acknowledgment of a married woman's deed was taken before an officer financially interested in the transaction.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 345–347; Dec. Dig. ☞62.]

Error from District Court, Bastrop County; Ed R. Sinks, Judge.

Action by Mahala Taylor and others against the W. C. Belcher Land Mortgage Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Wm. J. Berne, of Ft. Worth, for plaintiff in error. Fowler & Fowler, of Bastrop, for defendants in error.

### Findings of Fact.

JENKINS, J. 1. Charles H. Glover purchased the land in controversy in 1882 from John Wilkes, and executed therefor his several promissory notes, two of which were for the sum of $300 each, due respectively on or before October 15, 1887 and 1888, with 10

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
† Writ of error pending in Supreme Court.

per cent. interest thereon after maturity, and provided that they might be liquidated in cotton at 10 cents per pound, basis good ordinary.

2. Glover, with his wife, one of the defendants in error, moved upon the land at the time he purchased the same, and resided thereon as his homestead until his death; and his wife continued to reside thereon as her homestead up to the time of the trial of this case.

3. No lien was retained upon the land in either the deed to Glover, or in either of the notes.

4. Glover died intestate in March, 1884, leaving his widow and six minor children, aged from one to eleven years. In November, 1886, his widow married H. M. Taylor.

5. On November 26, 1887, the first of the two notes mentioned being due, and payment being demanded, and neither Mahala Taylor, former wife of Glover, nor her children, who were minors, having the money with which to pay same, and having no property other than their said homestead, Mahala Taylor and her husband, H. M. Taylor, applied to plaintiff in error for money with which to pay off said loan. Said application was granted, and plaintiff in error advanced $585, which was used as follows: $500 was paid to John Wilkes, the owner and holder of said notes, $60 to S. M. Smith and $25 to R. P. Jones, as commission for obtaining said loan.

6. Wilkes transferred said notes to plaintiff in error. This was not intended as a sale of said notes to plaintiff in error, but to subrogate it to the rights of Wilkes. At the same time Mahala Taylor and her husband wrote upon said notes their acknowledgments that the notes were a just debt, and promised to pay the same at the expiration of five years, in accordance with their bond and notes of that day; and they executed their note, called a bond, of even date therewith, in the sum of $600, payable to plaintiff in error, with interest at the rate of 7 per cent. per annum, payable semiannually, and also 10 interest notes, payable semiannually, the first due in 6 months, for $5, the remainder for $9 each, due semiannually thereafter. They also, at the same time, executed a deed of trust on said land to Horace H. Cobb, trustee, to secure said notes, reciting therein that it was to secure plaintiff in error in the payment of a just and subsisting original purchase-money debt. It provided that, in case of default, the land might be sold at the courthouse door in Travis county, upon notice posted for 10 days on the courthouse door of said county, and that, in the event of the failure or refusal of the trustee to act, such sale should be made by the acting sheriff of Travis county, as substitute trustee.

7. On September 22, 1893, H. M. Taylor having died, and Mahala Taylor being then a widow, she obtained from plaintiff in error a five-year extension of said $600 note, and on October 10, 1898, and again on October 1, 1903, obtained from plaintiff in error a like extension.

10. The last extension having expired, and said $600 note being due and unpaid, and said Cobb having refused to further act as trustee, the sheriff of Travis county, at the request of plaintiff in error, advertised and sold said land, as provided in the deed of trust, at which sale the plaintiff in error became the purchaser on April 4, 1911, for the sum of $875, and thereafter, on April 13, 1911, said sheriff executed and delivered to plaintiff in error a deed to said land.

11. Plaintiff in error was the only bidder at the sale, and bought the land for about one-third of its value.

12. In the loan transaction S. M. Smith acted as broker and agent for both plaintiff in error and defendants in error, and also for Wilkes, the owner of the notes. R. P. Jones acted as agent for defendants in error and Wilkes.

Opinion.

[1, 2] This suit was brought by defendants in error in the form of trespass to try title, and also to cancel the deed made by the sheriff of Travis county, substitute trustee, as being a cloud on the title of defendants in error. Though the deed of trust be void, plaintiff in error, having advanced the money with which the Wilkes notes were paid, was subrogated to his rights, which were to establish his equitable lien by judgment and subject the land to sale. Wilkes' lien being only an equitable one, it would have been barred when his notes were barred by limitation. Vinson v. Whitfield, 133 S. W. 1096; Windom v. Howard, 26 S. W. 176; Pitschki v. Anderson, 49 Tex. 1. "It is a settled rule in this state that when a vendor's lien is not expressed in a deed to land, and the note has become barred, the lien cannot be enforced against the land." Johnson v. Dyer, 19 Tex. Civ. App. 602, 47 S. W. 731. This is but an application of the common-law rule that a lien is an incident of the debt, and will stand or fall with it. A vendor's lien reserved in a deed rests upon a different proposition. The right of plaintiff in error to enforce the equitable lien against the land might have been asserted by cross-action, had it filed the same in time, but it did not assert such right until more than four years after the expiration of the last extension. Such being the state of the pleading, the only issue in this case was as to the validity of the deed made by the sheriff of Travis county, as substitute trustee.

The trial court held that the deed made by the sheriff was void, for the reason that the renewals, while keeping alive the lien (if any) in the original deed of trust, did not keep alive the power to sell in Travis county as against the statute of 1889 requiring such

sale to be made in the county where the land is situated. The view which we take as to the invalidity of the deed of trust renders it unnecessary for us to pass upon this point.

· [3] The debt evidenced by the Wilkes notes was not owing by either the wife or children of Glover. It was a debt owing by the community estate of Glover, deceased, and his surviving wife; and, as survivor of said estate, she may have sold or mortgaged property to pay or secure such debt, but, upon her subsequent marriage with Taylor, her rights as survivor ceased. Hasseldenz v. Dofflemeyer, 45 S. W. 830.

[4] As tenant in common with her children, she had the right to extend the debt in order to preserve the property upon which it was an implied lien, neither she nor her children being able to pay the note that had matured, and such extension being beneficial both to her and her children. Under such circumstances a party is authorized to act for his or her cotenants, even though they be minors. Under· such circumstances she may have had authority to mortgage the land for the debt for which the lien existed, but certainly. not for any additional amount, so as to be binding upon the minors. This debt at the time the mortgage was executed was the then value of the Wilkes notes. The evidence does not indicate with certainty what this value was. The notes were payable on or before maturity, and might be discharged in cotton at 10 cents per pound. No testimony appears in the record as to the value of cotton at that time; but, as Wilkes sold the notes for $500, it may fairly be presumed that their value was that sum. That plaintiff in error did not consider the notes worth their face value is shown by the testimony of S. M. Smith, a witness for plaintiff in error, who assisted in negotiating the notes, and who testified that plaintiff in error would not buy them, for the reason that they were payable on or before maturity, and might be paid in cotton. One of the notes was not due until 12 months after the mortgage was executed, and, as it bore no interest until maturity, it certainly was worth at least the legal interest (6 per cent.) less than its face value, which would reduce its value to $282, making the total indebtedness against the land at that time $582. The mortgage was for $600, with interest, including the interest notes, at 10 per cent. per annum, payable semiannually. Including Smith's and Jones' commissions, plaintiff in error advanced $585; and this under the agreement that the debt should be .made payable in money, secured by a mortgage, and the interest increased to 10 per cent., payable semiannually, including the $300 note not due, and which bore no interest until maturity.

[5] The land being the homestead of H. M. Taylor and wife at the time the ·mortgage was given, they could not mortgage it for an amount in excess of the purchase-money debt, which we have seen may fairly be presumed to have been $500, and certainly not more than $582. The sale was by virtue of the deed of trust, and, as it was given for an amount in excess of that for which the homestead was liable, and in excess of the amount for which the minors' interest was liable, it was void, and the trustee's deed conveyed no title. Hillyer v. Westfall, 67 S. W. 1047; Girardeau v. Perkins (on motion for rehearing) 126 S. W. 637; Building Ass'n v. Goforth, 94 Tex. 259, 59 S. W. 873.

[6, 7] Mrs. Taylor, being a married woman. at the time of the execution of the note which the mortgage was given to secure, could not bind herself personally for the debt. It was in default of the payment of this debt that the trustee sold the land. If the extensions obtained by 'Mrs. Taylor after the death of Taylor amounted to no more than extensions of the original promise to pay, then the note executed by her was void at the time of the trustee's sale. A void indebtedness cannot be extended, for the reason it never existed. A void debt is no debt. If such extensions were new promises to pay, made after she became a feme sole, then they did not authorize the sale in Travis county, by reason of the statute of 1889.

[8] The mortgage executed by Mrs. Taylor was void for another reason. Being a married woman, she could not execute a mortgage upon her separate property, nor upon her homestead, without acknowledging the same before an officer authorized to take her acknowledgment. Jones, the notary before whom the acknowledgment was taken, was interested in the transaction to the extent of $25, which he was to receive in the event such mortgage was given, and without which plaintiff in error would not have advanced the money with which to pay off the Wilkes notes, and which sum he did receive as part of the commission for negotiating the deal. Brown v. Moore, 38 Tex. 648; Rothschild v. Daugher, 85 Tex. 333, 20 S. W. 142, 16 L. R. A. 719, 34 Am. St. Rep. 812; Miles v. Kelly, 40 S. W. 602; Sample v. 'Irwin, 45. Tex. 573.

[9] Smith, who acted in the capacity of a broker, and who inspected the land for plaintiff in error, knew that Jones was to receive $25 commission for assisting in negotiating the deal, and we think that his knowledge was imputable to plaintiff in error. Smith testified, without contradiction, that:

"By contract with Jones, Wilkes was to receive $500 for the notes, and Jones, as his commission, was to receive $25. I, for my commission, was to receive $60, and the Belcher Land Mortgage Company $15. * * * The company prepared these deeds of trust and bond and coupon notes, and delivered them to me, and I delivered them to Jones. · * * * I examined the above-mentioned land in person, the examination being made to determine the value of the land, and also to see who was living upon it. * * * The report is in my handwriting. * * * It is immediately under the· head 'Inspector's Report.' * * * In said

transaction R. P. Jones acted for Wilkes, and also for H. M. Taylor and Mahala Taylor. * * * In 1887, at the time of the aforesaid transaction concerning said land, I had frequently acted as inspector of lands for parties wishing to make loans. * * * The bodies of said instruments (the mortgage and notes), except where printed, are in my handwriting. * * * I did work for the company during October and November, 1887, and had an account with them on their books."

The $60 was paid Smith by crediting his account on the books of plaintiff in error for that amount. $525 was paid by check. Smith was a real estate and loan agent in Austin at the time, where plaintiff in error had its office.

For the reasons stated, we affirm in all things the judgment of the trial court, setting aside and canceling the deed of trust, and decreeing title and right of possession in defendants in error.

Affirmed.