## M. M. MILLER ET AL. v. M. E. GIST ET AL.

### No. 610.—Decided December 16, 1897.

**1.  Certificate—Transfer of Part—Relocation.**

The owner of a 640 acre certificate, located in two tracts, conveyed to another so much of it as covered one of the tracts, together with the land located thereby, described in the transfer as containing about 170 acres. The certificate being floated and located elsewhere, because of a question as to validity of location, such transfer was prima facie evidence of the grantee's title to 170 acres of the new location, without proof that the first location of the part transferred embraced that amount,—though the transfer provided for addition to or deduction from the price if the acreage exceeded or fell short of the estimated amount. (P. 339.)

**2.  Same—Acres Transferred—Evidence—Field Notes.**

If proof of the number of acres in the original location was necessary, it seems that the field notes of such location, showing that it embraced 177 acres, supplied evidence on that point. (P. 339.)

**3.  Registration—Notice.**

Whether registration of such transfer was notice to a purchaser, from the heirs of the original grantee, of the land patented under the new location, was not material when the purchaser was shown to have had actual notice of such transfer. (P. 339.)

**4.  Certificate—Transfer—Warranty—Legal Title.**

The transfer of a part of the certificate being with warranty, the issue of patent to the original grantee vested, by estoppel, the legal title to an undivided interest in the heirs of him to whom it was transferred. (Barroum v. Culmell, 90 Texas, 93, followed, and Abernathy v. Stone, 81 Texas, 430, distinguished.) (Pp. 339, 340.)

**5.  Limitation.—Suit by Party in Possession.**

An unsuccessful suit, by one in possession of land, against another claimant, to remove clouds from title, did not affect his title by limitation against the rest of the world. (P. 340.)

**6.  Adverse Possession.**

Parties who claim land and enter into possession under a deed to the entire interest, recognizing no cotenancy, need no other act of repudiation of the title of other part owners to set limitation running. (P. 340.)

**7.  Outstanding Title by Limitation—Pleading.**

Outstanding title need not usually be specially pleaded, to avail a defendant in trespass to try title; but a title accruing by virtue of the statute of limitations, if relied on, must be pleaded. (P. 340.)

**8.  Limitation—Judgment—Possession.**

One obtaining judgment for land against parties in possession, but not acquiring the possession thereunder, can not avail himself of their title by limitation, to defeat an adverse claimant. (Pp. 340, 341.)

**9.   Title to Land—Undivided Interest—Limitation.**

A recovery by one defendant, who establishes, by limitation, title to one-third of the land in controversy, extinguishes, to that extent, the title of plaintiffs claiming an undivided interest, and it is error to award them judgment for the entire interest claimed by them, out of the part claimed by other defendants.   (P. 341.)

ERROR to the Court of Civil Appeals for the Second District, in an appeal from Archer County.

*F. E. Dycus*, for plaintiffs in error.—The court erred in its conclusions of facts, in finding that the transfer from M. M. Miller to John F. Thomas conveyed 170 acres out of the Barnett 640 acres certificate.   Davis v. Rankin, 50 Texas, 286; McAlpine v. Burnett, 23 Texas, 651; Baldwin v. Goldfrank, 88 Texas, 249.

The court erred in not finding as a fact that E. H. East and R. R. Milton took possession of the entire tract in controversy, containing 320 acres, in the spring of 1883, under a deed from W. N. Coombes conveying said tract which was duly registered in Archer County in April, 1883, and that these petitioners in error held under Milton and East and that they and their vendees have held possession from 1883 up to 1895, paying the taxes for all these years, and that these facts brought notice of hostility to the Thomas heirs home to them.   Church v. Waggoner, 78 Texas, 200; Alexander v. Kennedy, 19 Texas, 488.

The court erred in holding that the heirs of John F. Thomas, to-wit: M. E. Gist, et al., held the legal title to the 85 acres under the transfer from Miller to Thomas, and that therefore the doctrine of stale demand would not apply.   Abernathy v. Stone, 81 Texas, 430; Barroum v. Culmell, 90 Texas, 93; Frost v. Wolf, 77 Texas, 459; Montgomery v. Noyes, 73 Texas, 210.

The court erred in not finding that Mrs. Thomson and J. W. Thomas were barred by the statute of five years limitation.   Taliaferro v. Butler, 77 Texas, 578; Church v. Waggoner, 78 Texas, 200.

Said court erred in holding that the adverse possession of East and others did not put the Thomas heirs on notice that their alleged rights had been repudiated.   Linnartz v. McCulloch, 27 S. W. Rep., 279; Boone v. Knox, 80 Texas, 643; Stovall v. Carmichael, 52 Texas, 383.

Said court erred in finding that East had constructive notice of the rights of the Thomas heirs, by the registration of the deed from Miller to Thomas.   The instrument gave no such description as would impart notice to a purchaser.   McLouth v. Hurt, 51 Texas, 115; Taylor v. Harrison, 47 Texas, 454.

The court erred in holding that the evidence established the amount of the land conveyed by M. M. Miller to John F. Thomas.   Davis v. Rankin, 50 Texas, 286.

*W. E. Forgy* and *Carrigan & Montgomery*, for M. E. Gist et al. Whenever the owner of a land certificate sells a portion of the land located by virtue of said certificate, and the certificate is afterwards

floated and is relocated elsewhere, then the vendee of the land before location becomes the owner of the same amount of land in the new location as was conveyed him out of the old. Hearne v. Gillet, 62 Texas, 27; East v. Dugan, 79 Texas, 329.

The legal title vested in J. F. Thomas, and not in the heirs of Miller; and stale demand does not apply. Barroum v. Culmell, 90 Texas, 93.

GAINES, CHIEF JUSTICE.—On February 4, 1895, Emma A. Miller, joined by her husband W. B. Miller, brought an action of trespass to try title against E. H. East, F. E. Dycus, M. M. Miller, Jr., and others, to recover the west half of a survey of six hundred and forty acres of land lying in Archer County and patented to Madison M. Miller as assignee of George W. Barnett. On the 28th of October of the same year Mrs. M. E. Gist and her husband and others brought suit against the defendants in the first suit, whose names have been given, and John Baxter, to recover an undivided interest of eighty-five acres in the same land. The two suits were consolidated and tried as one, and resulted in a judgment in favor of Emma A. Miller, the plaintiff in the first suit, for an undivided one-sixth interest in the land, and that the plaintiffs in the second suit take nothing. The defendants who had an interest in the litigation appealed, as did also the plaintiffs in the second suit. In the Court of Civil Appeals the judgment was reversed, and judgment was rendered, that the plaintiff in the second suit recover 78 $\frac{13}{14}$ acres, undivided, of the land in controversy, and that the recovery of Emma A. Miller be restricted to a life estate in an undivided one-sixth interest of what should remain. The defendants Dycus and M. M. Miller, Jr. have sued out this writ of error.

The certificate by virtue of which the land in controversy was located and patented was issued to G. W. Barnett under an act "to open and establish the Central National Road" approved February 5, 1844, and was transferred by the grantee to Madison M. Miller, October 25, 1855. The certificate was located by the assignee upon two surveys in Ellis County, one of one hundred and seventy acres approximately, and the other of four hundred and sixty-three acres. On the first day of February, 1859, Miller conveyed so much of the certificate as covered the smaller survey, by an instrument of the body of which the following is a copy:

"Be it known that I, M. M. Miller, of the State of Texas and County of Dallas, for and in consideration of one dollar per acre, have this day bargained and sold, and do hereby convey unto John F. Thomas, of the State aforesaid and County of Ellis, so much of Certificate No. 2, issued to Geo. W. Barnett on the 6th day of January, 1845, by Geo. W. Still, Sup. C. N. Road, and approved the same date by the Commissioners of said Road, for 640 acres, as may cover a tract of vacant or unsurveyed land, situated in the North part of Ellis County, bounded on the North by the A. M. Lavender 640 acre survey; on the

East by James Conway survey; on the South by a small survey for W. H. Morris, and on the West by a survey for M.· B. Runnells, supposed to be about 170 acres.    To have and to hold unto him the said John F. Thomas, his heirs and assigns forever, the title to so much of said certificate, and also to the above described land when .patented by virtue of said certificate.    I do hereby guarantee unto him the said Thomas, that said certificate is valid and genuine, and that my right to convey it to him. is in every way unincumbered, and hereby authorize the Commr. of the Gen'l Land Office to issue a patent to him for the above described land, when survey and application is made in due course of law.    I do hereby acknowledge the receipt of $170 from said John F. Thomas.    Should the said quantity of land contained in the above recited boundaries be less than 170 acres, I hereby promise to pay back to said Thomas, for the deficiency at the rate of $1 per acre.    He, the said Thomas, binding himself to pay to me the rates of one dollar per acre for the excess that may be above 170 acres, this the 1st day of Febry., 1859."

It seems that, by reason of the fact that the certificate was filed upon two separate tracts of land, a question arose as to the validity of the locations.    It was accordingly withdrawn and located in Archer County upon the land in controversy.

Madison M. Miller was thrice married.    The certificate was acquired during his second marriage.    He died after the third marriage, leaving his third wife surviving him.    She was the plaintiff in the first suit.    There was no issue of the third marriage.    Miller left three children,—one daughter by his first wife, and two—a son and a daughter—by the second.    M. M. Miller, Jr., one of the defendants, was the son. The defendants at the time of the institution of the suits were the owners of whatever interest those two daughters inherited from their father.

John F. Thomas died in the year 1866 and at the time of the bringing of the suits there were living five of his daughters and one son. Those were the real plaintiffs in the second suit.    All his other children had then died without issue,—but one, a daughter, left a husband surviving, who was still living at the bringing of this suit.    The Court of Civil Appeals held that his interest had at the time of the trial been acquired by the defendants by virtue of the statute of limitations.

One W. N. Coombs bought the land in controversy at a sale made under an order of the County Court of Dallas County by the administrator of the estate of one George W. Guess, and it was conveyed to to him.    Coombs sold and conveyed the land to defendant East and one Milton in 1883, and this deed was in that year duly registered.    East and the heirs of Milton brought suit for the land against one Dugan, and in the year 1886, upon the trial of the case, the land was adjudged to Dugan.    The judgment was affirmed in the Supreme Court in 1891. Thereafter, in the same year, M. M. Miller, Jr., and the other children of the patentee conveyed their interest in the property to defendant

Dycus, who then conveyed to defendant Miller an undivided one-half interest in the property, and then to East 106⅔ acres. Thereafter defendant Miller reconveyed to defendant Dycus a one-sixth interest. East, Dycus and Miller brought suit against Dugan, and in September, 1891, recovered a judgment for the land against him.

Defendant East and Milton took possession of the land in 1883 and held it until the death of Milton. He and Milton's heirs continued to hold it until they sold their interest. The date of the latter transaction does not clearly appear, but East continued in possession and paid the taxes until 1891. All the defendants pleaded the statute of limitations of five and ten years against all the plaintiffs in both suits. All the plaintiffs, save a son of John F. Thomas, in reply to the plea of limitations pleaded coverture.

Emma Miller, the plaintiff in the first suit, did not appeal, nor has she complained in this court of the judgment of the Court of Civil Appeals as to her. Nor have the plaintiffs in error complained of the judgment of that court in her favor; but as against the heirs of Thomas they have assigned numerous errors.

They first complain, that the transfer from Miller to Thomas conveyed only so much of the certificate as was located upon the smaller survey in Dallas County, and that it was incumbent upon the heirs of Thomas to prove how many acres that survey contained. The transfer however describes the quantity as "about 170 acres," and we think this prima facie evidence of the fact that that was the true quantity. The heirs of Thomas only claimed upon the basis of a conveyance of 170 acres of the certificate. Besides, the field-notes of the survey were introduced in evidence and showed that they embraced 177 acres. Why this was not evidence of the fact we do not see.

East also testified that when he bought from Dycus he paid the purchase money without any knowledge of the claim of the Thomas heirs, and it is urged that the Court of Civil Appeals erred in holding that the registration of the transfer from Miller to Thomas was constructive notice of their rights. Dycus, as appears from the evidence, knew of the transfer long before he bought. Defendant Miller did not prove that he paid anything when Dycus reconveyed a half interest in the land to him. Under this state of the evidence, East not having appealed, we do not see that the question of bona fide purchaser was before the court.

It is further insisted, that the claim of the Thomas heirs was a stale demand, and that the Court of Civil Appeals erred in not so holding. The case of Abernathy v. Stone, 81 Texas, 430, is relied upon in support of this contention. In that case however the owner of the certificate had located it upon two or more tracts of land, and before patent had issued conveyed one of the tracts by metes and bounds without express covenants of warranty. Subsequently the grantee floated the whole certificate and located it upon several parcels of land in another county. The grantee, having been guilty of laches, brought suit to re-

cover such proportion of the new locations as the number of acres in the land bought by him bore to the number of acres in the certificate, and it was held that his claim was equitable and his demand stale. Here however, although the certificate had been located, the transfer was to so much of the certificate as covered the land located by it, and contained what we construe to be a full covenant of warranty. In such case we think the decision in Barroum v. Culmell, 90 Texas, 93, applies, and that upon the issue of the patent the heirs of Thomas took by estoppel the legal title to an undivided interest in the land so patented.

It is also complained that two of the plaintiffs in the second suit, namely, Mrs. Thomson and J. W. Thomas, were barred by limitation. They were not shown to be under disability when East and Milton took possession in 1883. It seems to us they were barred as to East, and may have been barred as to Milton's heirs or as to the purchaser from them. East held possession from 1883 to 1891 under a duly registered deed, and paid in the meantime all taxes. It is true, that during the time he held possession he and Milton's heirs brought suit against Dugan, presumably to remove cloud from title; and that in 1886 a judgment for the land was rendered against them in Dugan's favor. The case however was appealed to the Supreme Court and not decided in 1891. We are of opinion, that the rights of East and Milton's heirs as against all the world except Dugan were not affected by this suit. East at least kept his flag flying and acquired by limitation whatever title Mrs. Thomson and J. W. Thomas had in the land. The deed under which he and Milton claimed was to the entire interest in the land and recognized no cotenancy. No repudiation on his part of the interest of the Thomas heirs who were not under disability was necessary to set the statute in operation against them. East at least could have defeated their claim to the extent of one-half of the interest claimed by them, but in the judgment of the Court of Civil Appeals he was allowed one-third of the whole tract and has not complained in this court. We incline to think that the evidence showed an outstanding title by limitation in East to one-half of the land as against all the plaintiffs who were not under disability of coverture, and possibly in the grantee of Milton's heirs to the other half, and that if Dycus and Miller had pleaded such outstanding title they should have defeated the suit of Mrs. Thomson and J. W. Thomas. Ordinarily, in an action of trespass to try title, it is not necessary to plead an outstanding title. But a title accruing by virtue of the statute of limitations, if relied on, must be pleaded.

But it is urged that since Dugan recovered the land against East and Milton's heirs, and Dycus and Miller recovered of Dugan, Dycus and Miller have whatever title East and Milton's heirs had; and have a right to avail themselves of this title in this suit. The difficulty in the way of that contention is, that the judgment in the case of East and others against

Dugan was rendered in 1886, which was less than five years after East and Milton went into possession.

Although the judgment was not affirmed until 1891, during the time of the appeal it was suspended but not vacated. It was effective from its date and not merely from the time of its affirmance. While if no appeal had been taken and if Dugan had got possession under the judgment, he may have tacked his possession to that of East and Milton, the fact is that he never had possession and neither East nor Milton ever held the land for him. He could not have successfully asserted title by limitations nor can Dycus and Miller do so by reason of their judgment against him.

So far we find no error in the judgment of the Court of Civil Appeals. But since East recovered an interest of one hundred and six and two-third acres in the land in controversy and since, as we think, the statute of limitations ran in his favor against Mrs. Thomson and J. W. Thomas, they should not have recovered all their interest at the expense of Dycus and Miller. East recovered one-third of land as against them and that recovery extinguished one-third of their respective claims. We are of opinion therefore that the judgment of the Court of Civil Appeals should be so reformed as to allow defendants in error, Mrs. Thomson and J. W. Thomas, each to recover only an undivided interest of eight and seventy-seven one hundredths acres, in the land in controversy. As so reformed the judgment is affirmed.

*Reformed and affirmed.*