GIBBS et al. v. LESTER et al.

No. 1283—5750.

Commission of Appeals of Texas, Section B.
July 22, 1931.

E. J. Pickens, of Canadian, and Works & Bassett and Cooper & Lumpkin, all of Amarillo, for plaintiffs in error.

Trulove & Frazee, of Amarillo, and Hoover & Cussen, of Canadian, for defendants in error.

SHORT, P. J.

This suit involves the title and right to the possession of the John Gibbs Survey of

land situated in Hutchison county. It was filed by the plaintiffs in error against the defendants in error in the district court of that county on June 26, 1926. The plaintiffs in error, other than A. S. Burleson and A. A. Lumpkin, claim to be the owners of the land sued for as the heirs of John Gibbs, and the plaintiffs in error Burleson and Lumpkin claimed under the heirs of John Gibbs. The defendants in error claimed the land under and by virtue of the five and ten year statute of limitation. Upon the trial of the case the court submitted to the jury, after defining what constituted the five and ten year statute of limitation (Rev. St. 1925, arts. 5509, 5510), and after defining what is meant by peaceable and adverse possession, the case upon special issues. The jury found that the plaintiffs in error were the heirs and vendees of the heirs of John Gibbs, the grantee in the certificate, by virtue of which the land was patented, but found in favor of the defendants in error on the issues of limitation, and the court rendered judgment in favor of the defendants in error, based upon the findings of fact. Upon appeal to the Court of Civil Appeals, the judgment of the district court was affirmed. 24 S.W.(2d) 527. The writ of error was granted upon the conflicts alleged in the application by the plaintiffs in error.

While the defendants in error contended that the plaintiffs in error were not entitled to recover as the heirs of John Gibbs, and the vendees of such heirs, in view of the disposition we shall make of this case, and the verdict of the jury, it will not be necessary to discuss that question. We will assume that the plaintiffs in error held the record title to the land involved, and were entitled to recover the possession of it, unless the defendants in error had acquired title under the statute of either the five or ten year statute of limitation. The trial developed that the defendants in error claimed under one John Glenn, who had a deed from one J. H. Truitt conveying the land in controversy to him in 1902. This deed was placed on record in 1903, and commencing with 1905, either John Glenn or his vendees, except a man by the name of Wright, who held a deed from John Glenn for a few weeks, when it was reconveyed to John Glenn by right, who paid the taxes regularly, continuously claimed the land up to the time this suit was filed.

In 1914 the vendee of John Glenn, A. B. Carruthers, filed a suit in the form of trespass to try title against the plaintiffs in error, having apparently the purpose to establish his title under the statute of limitations. The plaintiffs in error, in this case, as defendants in error in that case, filed a general demurrer, a general denial, and a plea of not guilty. In 1915 this suit was dismissed by the plaintiffs, and another suit, in 1916, of

a similar nature, was filed against the same parties as defendants, in the same court, where the original suit was filed, that is, in the district court of Hutchison county, and the plaintiffs in error, as defendants in that suit, again filed a general demurrer, general denial, and a plea of not guilty. This suit remained on the docket until 1924, when it was voluntarily dismissed by the plaintiffs. Then this suit was filed as above stated.

It may be conceded, for the purpose of discussing the question, that the defendants in error did not show, by a preponderance of the evidence, that they had acquired, as against the plaintiffs in error, the title either under the five-year statute of limitation or the ten-year statute of limitation to the land involved, should the time during which these suits were pending be excluded, in computing the time during which the defendants in error were in possession of the land. It is contended by the plaintiffs in error that when the defendants in error filed these suits, respectively, this stopped the running of the statute of limitation in their favor. While the testimony, as to the time these suits were so filed, and the time they were pending, and the character of the suits, was excluded from the consideration of the jury by the trial court, yet the bill of exception shows all of these facts without controversy. The assignments of error fully present the question, and in support of their contention, that the filing of these suits stopped the running of the statute of limitation, during their pendency, the plaintiffs in error present three cases which they claim sustain their contention, and as being in conflict with the opinion of the Court of Civil Appeals in this case, to wit: Taylor v. W. C. Belcher Loan & Mortgage Co. (Tex. Civ. App.) 265 S. W. 403; Miller v. Gist, 91 Tex. 335, 43 S. W. 263; Cavitt v. Amsler (Tex. Civ. App.) 242 S. W. 246, 249. The opinion in the first case, by the Court of Civil Appeals of the Third District, did not reach the Supreme Court. The last case, which is also an opinion rendered by the Court of Civil Appeals, did reach the Supreme Court, and was dismissed for want of jurisdiction. In the other, an opinion was rendered by the Supreme Court itself. Before discussing these cases, we deem it proper to discuss the statutes and the opinions in some other cases rendered by the Supreme Court itself.

Article 5514, R. S. 1925, defines "peaceable possession" to be "such as is continuous and not interrupted by adverse suit to recover the estate." Article 5515 defines "adverse possession" to be "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." The word "estate" in law means the degree, quality, nature, and extent of one's interest or ownership of land or other tene-

ments. It is the settled law of the state of Texas that a title by limitation, when perfected, is as good as a title by patent from the state. Statutes of limitation are founded upon the highest consideration of public policy, as they are statutes of repose, and conducive to order and public tranquility, by quieting title, suppressing fraud, and supplying the deficiencies of proof arising from the antiquity of the transaction. In addition to having peaceable and adverse possession to a tract of land, in order to prosecute a title under the five-year statute, one must either cultivate or use or enjoy the same peaceably, openly, and uninterrupted for five consecutive years, and also by paying taxes thereon regularly each year, in the meanwhile claiming under a deed or deeds duly registered. One may also acquire a title by limitation, under the ten-year statute, by having peaceable and adverse possession of a tract of land described by an instrument of writing, properly recorded, cultivating, using, and enjoying the same for ten years. In order to stop the running of the statute of limitation, and interrupt the peaceable and adverse possession mentioned in the statute, the suit not only must be to recover "the estate," but it must be an adverse suit. That is to say, a suit by some one claiming adversely to the person who, being in possession of the property, is claiming a title under the statute of limitations. Such a suit, as is mentioned in article 5514, must not only be "adverse" to the parties claiming the title under the statutes of limitation, that is, conflicting, antagonistic and hostile, to such person, but such suit must be duly prosecuted to final judgment. Shields v. Boone, 22 Tex. 193; Chambers v. Shaw, 23 Tex. 165; Highsmith v. Ussery, 25 Tex. Supp. 97; Hughes v. Lane, 25 Tex. 356; Edgar v. Galveston City Co., 46 Tex. 421; Connoly v. Hammond, 58 Tex. 11; Flanagan v. Pearson, 61 Tex. 302; Bigham v. Talbot, 63 Tex. 271; Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609. While the limitation is interrupted by suit, an abandonment of the suit will have the same effect as if the suit had never been instituted. Upon the contrary, a suit prosecuted to effect against a tenant in possession, within ten years from the adverse entry by the landlord, breaks the continuity and avoids the defense of the ten-year limitation when asserted by the landlord of such tenant, against the holder of the proper title. Stout v. Taul, 71 Tex. 438, 9 S. W. 329.

There are other decisions supporting the principle enunciated in the decisions we have mentioned, to the effect that the entry of the true owner upon the land does not disturb the actual possession of the claimant, except that entry be manifested by the filing of an adverse suit in a court of competent jurisdiction against the claimant, and the prosecution of such suit to a final judgment upon the merits of the case, wherein the rights of the respective parties to the land involved are finally adjudicated. In other words, peaceable and adverse possession ceased only when such an adverse suit is filed, and the running of the statute of limitation is not interrupted, unless such adverse suit is prosecuted to final judgment.

Referring to the cases, which the plaintiffs in error contend are in conflict with the opinion of the Court of Civil Appeals in this case, we find that there is no real conflict when these cases are properly construed in the light of the question involved. In Miller v. Gist, 91 Tex. 335, 43 S. W. 263, both parties claimed the land under a limitation title, and the court merely held that an unsuccessful suit, by one of such parties, did not affect his title by limitation against the rest of the world. Taylor v. W. C. Belcher Loan & Mortgage Co. (Tex. Civ. App.) 265 S. W. 403, 405, is distinguished from this case in several particulars. In that case, the parties prosecuted a suit to a final judgment in the Supreme Court, and it was merely held in that case that the statute of limitation was suspended between the filing, by one in possession, of a suit, in trespass to try title, and for adjudication of the right of possession, and the final judgment rendered by the Supreme Court. In that case, W. C. Belcher Loan & Mortgage Company was the owner of certain vendor's lien notes, secured by a deed of trust on the land in controversy, the title to which was in Mahala Taylor, a widow, and in her children, as heirs of their deceased father. The Taylors repudiated the loan, and thereafter the mortgage company caused the land to be sold under the power given in the deed of trust, and became the purchaser of the land at the sale. Thereafter the Taylors, while in possession of the land, instituted suit against the mortgage company to cancel and annul the deed of trust and the trustee's deed, the petition also containing a count in the usual form of a suit of trespass to try title. The mortgage company answered by a general denial, and a plea of not guilty. Judgment was rendered in that suit for the Taylors, annulling the deed of trust, and canceling the trustee's deed, and further adjudging that they have the title and possession of the land in controversy. The mortgage company appealed from such judgment, which was affirmed. (Tex. Civ. App.) 173 S. W. 278. A writ of error was granted by the Supreme Court, and upon a hearing that court reversed the judgment of the trial court and of the Court of Civil Appeals and rendered judgment for the mortgage company, the general order being that plaintiffs take nothing by their suit, and that the defendant go hence without day, and with its costs. 212 S. W.

647. No writ of possession was awarded the mortgage company as successful defendant in that suit, since both the pleadings of the plaintiffs and itself admitted that it was in possession, although the Taylors were then, and had been for years thereto, in possession of the land in controversy, and remained so during the pendency of the appeal by the mortgage company. Thereafter a writ of possession was issued by the mortgage company, but the sheriff refused to serve it without an indemnity bond. The mortgage company then filed a suit in trespass to try title against the Taylors, being the same parties in the former suit, and involving the same land. The Taylors attempted to claim the land by limitation, and as a part of their claim sought to embrace the time during which the original suit was pending, and the court held that this could not be done under the facts shown by the record.

After quoting the statute defining "peaceable possession," the court, in that case, says: "The rule announced on this question is that where a claimant in possession of land brings an action to adjudicate his title and right of possession against another, who is asserting some right of title or possession, such action, when contested, suspends the running of limitation in favor of the occupant pending the final judgment." As indicating the construction placed by the court by this language, which we have quoted, it quotes the following from 17 Ruling Case Law, 870, pars. 228 and 232:

"Where the character of legal proceedings is such that the law restrains one of the parties from exercising a legal remedy against another, the running of the statute of limitations applicable to the remedy is postponed, or, if it has commenced to run, is suspended, during the time the restraint incident to the proceedings continues. * * *

"An action is said to be pending, so far as suspending the statute is concerned, until the final disposition of the appeal. So an appeal which suspends the right to recover possession of land has been held to stay the running of the statute against an action to recover rents and profits pending such appeal. And, as a cause of action cannot be said to have accrued until an action can be instituted thereon, when the regularity of the proceedings for the condemnation of land, as well as the amount of damages due the owner, is pending on appeal, he cannot bring an independent action for such damages."

This rule is necessarily a very just one. If a party commences legal proceedings, the character of which is such that the law restrained one of the parties from exercising the legal remedy against another, common justice demands that these legal proceedings, being of such character, should not have the legal effect to protect the person who commenced them, and thereby prevent his adversary from exercising his legal remedy against him. The above-quoted excerpt from Ruling Case Law is also used by the court in its opinion rendered in Cavitt v. Amsler, supra, the opinion of which is claimed to be in conflict with the opinion in this case on this subject. In Cavitt v. Amsler, the court quotes from 25 Cyc. 1278, as follows: "Where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right."

In the case at bar, the plaintiffs in error were not prevented from exercising their legal remedy to institute an adverse suit against the defendants in error to recover the estate involved. Obviously, the plaintiffs in error had the right, in either of the suits brought against them by the defendants in error, to have filed a cross-action in the form of a trespass to try title, asking affirmative relief to remove the cloud cast by the claim to the land by the defendants in error, to adjudicate the title thereto, and to recover the possession thereof. This they did not do, and the defendants in error, in each instance, the record being in this condition, exercised their legal right to dismiss the case which had been brought against the plaintiffs in error. The court was under the duty to do as the defendants in error requested in the absence of the filing of a cross-action in the form of a plea for affirmative relief.

Had the position of the parties been reversed in these two suits, and had the pleadings of the parties been the same, as reversed, and had the plaintiffs in error, as original plaintiffs, brought these suits in trespass to try title against the defendants in error to recover the estate here involved, and had they done as the defendants in error did, dismissed these suits, and thereafter brought a suit as they did bring one here, the legal principles applicable to this question, as applied to the parties, would have been the same. Had such been the state of the record, plaintiffs in error could not have excluded the time, during which these suits were pending, so as to bar the defendants in error from their rights, as claimants and occupants of the land, to set up a title by limitation during the time these suits were pending, which were afterwards dismissed. It is well to remember that article 5514, R. S. 1925, is couched in substantially the same language as was used in the original state of 1836. This language defines the phrase "peaceable possession," and this phrase has reference to the status of a person in possession of land, under a claim of right, maturing under the statute of limitation. Where a person is in peaceable possession of a tract of land, under a claim of right, and

that peaceable possession is continuous, and is not "interrupted by adverse suit to recover the estate," the meaning of this statute evidently is that this "peaceable possession" of this actual occupant, under such claim, when continued a sufficient length of time, matures an otherwise defective title into a perfect one, other conditions of the statute being present, unless within the time prescribed by the statute of limitation, the owner of the record title, or other person having the superior title to the land involved, interrupts this peaceable possession by instituting an "adverse suit to recover the estate." Theoretically speaking, the owner of lands in Texas, evidenced by a record title, emanating from the sovereignty is always in constructive possession of his property. This constructive possession, so evidenced, continues until it has been broken by an actual entry upon the land by another under a claim of right, followed by an actual and visible appropriation of the land, which is inconsistent with, and hostile to, the claim of another. Even then, though the constructive possession of the true owner is broken, his title is not destroyed, but remains intact and of sufficient force and vitality to enable the owner to protect his property by virtue thereof against the claim of one in actual possession, asserting dominion over the land, provided only the owner of this record title shall, within the time prescribed by law, interrupt the possession which had previous to that time been "peaceable" on the part of the actual occupant, by instituting in a court of competent jurisdiction, an adverse suit to recover the estate and prosecute such suit to a final judgment. However, should the owner of the record title, or other owner of the superior title, neglect to protect his property, within the time prescribed by law, and in the manner so prescribed, and in the meantime the actual occupant of the land remain in "peaceable possession," and actually and visibly appropriate the land, under a claim inconsistent with and hostile to the claim of another, for the length of time prescribed by law, other conditions of the statute being present, the owner of the record title, or other superior title, ceases to have a cause of action against the actual occupant of the land, who had in the meantime become the real owner, by virtue of this neglect of the original real owner. The law does not impose any such duty on the part of one who seeks to acquire title to land under statute of limitations. It does not require him to institute any character of suit against any one, though, of course, it does not prohibit him from doing so. Since statutes of limitations are founded upon considerations of a sound public policy, and are statutes of repose, the courts liberally construe them in favor of those claiming lands by virtue of these statutes. "The general doctrine is well settled," says Judge Bell, in Shields v. Boone, 22 Tex.

197, "that a suit voluntarily abandoned, does not interrupt the statute of limitations," and he quotes Angell on Limitations, par. 327, a recognized authority on this subject and the cases there cited. Judge Bell further says in that case: "the language of the statute is as follows: 'Peaceable possession, within the scope of this act, is such as is continuous, and not interrupted by adverse suit to recover the estate.'" Among other things, discussing the statute, he says: "But, even in a strictly literal sense, it may be said, that 'a suit to recover an estate,' necessarily involves the idea of a prosecution of the suit to effect. It cannot be supposed, that laws would be enacted, in reference to a thing so idle as the commencement of suits, and the voluntary abandonment of them. It would be charging the legislature with great folly, to suppose that they ever intended to enact, that the institution of a suit, and the voluntary abandonment of it, could secure to a party any rights. Much less can we suppose that the legislature intended, in the enactment of a law for the avowed purpose of protecting persons who have held estates for a certain length of time, to declare that suits instituted and voluntarily abandoned, would have the effect to stop the *running of the statute in favor of those, whose possession, it was the object of the lawmakers to protect.* [Italics ours.] The object of the lawmakers, in the clause before us, was to define what is meant by a peaceable possession. Their minds were not particularly directed to the subject of the interruption of the statute." This doctrine, construing this statute, by Judge Bell, in Shields v. Boone, had been declared to be the law by the Supreme Court of this state in every case, wherein the question has been presented since that time.

We believe that the trial court was correct in refusing to admit proof of these suits, that had been instituted by the defendants in error against the plaintiff in error in the form of trespass to try title, and which involved this particular land, and which were afterwards dismissed by the original plaintiffs at a time when the original defendants had not filed any cross-action in either of them, asking affirmative relief against the original plaintiffs, because such proof so offered did not tend to establish any material issue in the case, and it was irrevelant and immaterial.

The plaintiffs in error present other assignments of error, the effect of which is to say that the testimony offered by the defendants in error, in support of their pleas under the five-year statute of limitation, and also under the ten-year statute of limitation when considered most favorably, in support of the findings of fact by the jury, are insufficient to sustain these findings and the judgment rendered thereon. The plaintiffs in error strenu-

ously contend in their briefs that the court erred in submitting question No. 3, and that the jury, in answering question No. 3 in the affirmative, as it did, did so without having any testimony before them to support it. Question No. 3 asks the jury to determine whether John Glenn had the peaceable possession of the lands in controversy, prescribed by the statute, for a period of five years at any period before the filing of this suit, under a deed duly registered, the meanwhile regularly paying all taxes and cultivating, using, and enjoying it. We do not think it necessary to pass on this specific contention, because the jury has answered that A. B. Carruthers, and those under whom Carruthers claimed, had the peaceable possession of the land in controversy, cultivating, using, and enjoying the same, and regularly paying all taxes thereon, and claiming under deeds duly registered for the period of five years at some period prior to the filing of this suit, it appearing that Carruthers purchased the land from John Glenn and went into possession of it by virtue of the deed which Glenn executed and delivered to him, which deed was duly recorded, and that he paid taxes regularly on the land, and used it continuously for more than five years, though the testimony does show that there were occasional temporary breaks in the actual possession. Moreover, the jury also found, in answer to question No. 5, that Carruthers and those under whom he claimed, and Carruthers' vendees, had peaceable and adverse possession of the land in controversy, cultivating, using, and enjoying the same continuously for a period of ten years, at some period before the filing of this suit. We think the jury was justified, under the testimony, in finding the facts which they did, in answer to issue Nos. 4 and 5. There was testimony which the jury were justified in believing that A. B. Carruthers and his vendor, John Glenn, had and held possession of said land for more than five years, meeting all the requirements of the statute; in this, that Carruthers, in privity with Glenn, held from January 1, 1905, until he sold the land to Davis, on January 1, 1917, which is a period of twelve years, any consecutive five years of which is sufficient to sustain the jury's verdict in answer to special issue No. 4. Again A. B. Carruthers, or he and his vendor, or he and his vendees, had and held said land for more than ten years prior to the filing of this suit, meeting all requirements of the statute, in that Glenn went into possession, fencing the land, and began using the same in January, 1904, which use, possession, and occupancy continued until October 20, 1909, when he sold to Carruthers, who in turn continued, without any interruption sufficient to break its continuity, the possession, use, occupation, and enjoyment until he conveyed to

Davis, January 1, 1917, and Davis in turn continued in said use until April, 1917, when the land was acquired by Lester, who in turn continued said use, possession, and enjoyment until June 26, 1926, the date of the filing of this suit, covering a period of twenty-two years, any consecutive ten of which is sufficient to sustain the jury's verdict in answer to the court's special issue No. 5.

While there are other assignments of error presented in the application, the questions involved are sufficiently discussed by the Court of Civil Appeals in its opinion. This opinion correctly disposes of every question presented by the plaintiffs in error, and in such way that we do not deem necessary any further discussion of them.

We recommend that the judgments of the Court of Civil Appeals and of the district court be affirmed.

GREENWOOD and PIERSON, JJ.

Judgments of the district court and Court of Civil Appeals affirmed.

CURETON, C. J., not sitting.