### JARRELL et ux. v. BOEDEKER.

#### No. 14140.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 29, 1940.

Rehearing Denied Dec. 27, 1940.

Homer B. Latham, of Bowie, and Glenn Wilson, of Nocona, for appellants.

Benson & Benson, of Bowie, for appellee.

DUNKLIN, Chief Justice.

This is a suit in trespass to try title, instituted by G. A. Jarrell and wife against

P. E. Boedeker, to recover title to two tracts of land, alleged to be within the boundaries of Section 2861, Texas Emigration & Land Co. Survey, in Montague County. The first tract is along the north boundary line of the section, and the second tract is along the west boundary line of the section.

Plaintiffs' claim of title to the first tract was under the statute of limitation of ten years, while their claim of title to the second tract was under general statutory provisions of trespass to try title. Defendant answered by pleas of not guilty.

At the conclusion of the evidence the court instructed a verdict in favor of the defendant, and plaintiffs have prosecuted this appeal from the judgment rendered on the verdict returned in obedience to the court's instruction.

During the introduction of evidence counsel for defendant admitted plaintiffs' ownership of title to said Section 2861; thus narrowing the first inquiry to whether or not the tracts sued for were within the boundaries of that section, as evidenced by its field notes.

During the year 1938, the defendant, the owner of lands adjoining Section 2861, reset and rebuilt the fences enclosing the section on the north and west. In plaintiffs' petition the first tract sued for was described by metes and bounds as being a strip off the north side of the section, four feet wide at the northwest corner of the section, and running east over ½ the length of the north line of the section to a point west of the northeast corner; the strip narrowing in width from the northwest corner until it reached that point, and including an area of .18 of an acre, excluded from the section in rebuilding the fences.

■ According to the testimony of a surveyor introduced as a witness for the plaintiffs, the fences, as rebuilt by the defendant, excluded that first tract from the rest of the section and included the same with the defendant's enclosure. Although that testimony was in conflict with the defendant's testimony on that point, yet the same, in connection with plaintiffs' further testimony that he and Ed May, from whom he purchased the section, had held peaceable, continuous and adverse possession of the section for some 35 years, using and enjoying the same for pasturage purposes, with the enclosing fences on the boundary lines of the section; presented a controverted issue of fact for determination of the jury, to the exclusion of the province of the court to determine that issue as a conclusion of law.

The proof showed that the west fence of Section 2861, at the time defendant repaired it, abutted on a lane about 27 feet wide, extending along the entire length of the west boundary of the section, which had been a public highway for travel for some 30 years. On the west boundary of the lane defendant had maintained a fence for the east boundary of his adjoining tract.

The second tract which plaintiffs sought to recover, alleged to be 1.93 acres, was described by metes and bounds, which included within its boundaries the lane above mentioned. According to the testimony of one surveyor introduced as a witness for the plaintiffs, all of that lane was within the boundary lines of Section 2861, while another surveyor testified that a part of it was so included.

Following the introduction of that testimony, the defendant introduced in evidence an order of the Commissioners' Court of Montague County, dated February 15th, 1938, closing the lane, in exchange for a new road therein described, with this recitation: "This action is being taken in view of the fact that the road to be closed is no longer maintained by the county and has not been so maintained for a period of at least 30 years and is now of no benefit to the citizenship of the vicinity of the said road." Defendant testified that he furnished the new road on his land for which the exchange was made, and acting under that order of the Commissioners' Court he removed his fence on the west side of the lane, thus placing the lane within his enclosure, and thereafter he claimed title thereto. After that order of the Commissioners' Court was admitted, the court sustained defendant's motion to exclude the testimony of the surveyors noted above, to the effect that the lane, or at least a portion thereof, was within the boundary lines of the section.

That ruling was based upon the theory presented by the defendant to the effect that the order of the Commissioners' Court was evidence of a prescriptive title in the county, to an interest in the land, and it was incumbent upon plaintiff to overcome the same because he must recover upon the strength of his own title rather than upon the weakness of defendant's claim of title.

■■ We conclude that there is merit in plaintiffs' assignment of error to that ruling, especially so in view of defendant's admission of title to Section 2861 in plaintiffs. Furthermore, it appears upon the face of the order the only claim the county had ever made to the lane was that of a highway easement. In 21 Tex.Jur., para. 98, page 622, this is said: "Under the law of eminent domain, a highway easement only is acquired by condemnation; the fee remains vested in him whose property was condemned. Also, the public right is but an easement when the roadway is dedicated by the owner or acquired by purchase or established by prescription."

■ And in paragraph 99, page 623, are further announcements to the same effect. Nor was there any pleading by defendant that the county had acquired title to the lane by limitation. 41 Tex.Jur., § 159, page 664; Miller v. Gist, 91 Tex. 335, 43 S.W. 263; Campbell v. Castle, Tex.Civ. App., 204 S.W. 484.

It is to be noted further the Commissioners' Court did not order a conveyance of any interest in the lane to the defendant for the highway furnished by him, nor was any such conveyance ever made.

The testimony of the defendant showed conclusively that in rebuilding the fences he acted not merely as a voluntary trespasser but in perfect good faith, under the belief that he reset the fences on practically the old lines, as a partition fence between plaintiffs' land and his own, and that the fences, as rebuilt by him, were much better than the old fences.

On July 17th, 1939, he wrote plaintiff this letter:

"Mr. G. A. Jarrell
"Separ, New Mexico
"Dear Sir:

"I am in receipt of your letter and I am sorry that you have had reports that make you think that you are being imposed upon.

"We built this fence several months ago and it is a good five wire fence with new posts and I thought that you would be pleased to have a new fence without any expense in the place of the old one which was nearly down. We will always need a partition fence and it is all right with me for you to own this fence so long as it remains where it is. I did straighten out a bow in the fence which threw a few feet of your land into the Thomas pasture and if you feel that you are damaged I am willing to make it satisfactory with you.

"With best wishes, I am,
"Yours very truly,
(Signed) "P. E. Boedeker.

"The report about changing the fence line is exaggerated. There is not more than a small fraction of an acre of land involved."

Plaintiff made no reply to that letter and never accepted the proposition therein made.

■ Article 7393, Vernon's Texas Civil Statutes, requiring pleading of improvements in good faith, was not applicable here, since there was no reason to suppose that the rebuilding of the fences constituted valuable improvements on either of the two tracts sued for. But the fences, as rebuilt, did constitute valuable improvements upon the entire section of land owned by the plaintiffs, and thus showed an equity in the defendant, for which he should be accorded some relief. And according to the following authorities, defendant's right to that equity could be awarded even under his plea of not guilty. Galveston, H. & S. A. Ry. Co. v. Blakeney, 73 Tex. 180, 11 S.W. 174; 1 Tex.Jur., para. 71, page 690; 17 Tex.Jur., para. 3, page 5, para. 36, page 38–39; 41 Tex.Jur., para. 138, page 631; Wright v. Doherty, 50 Tex. 34; McDow v. Rabb, 56 Tex. 154; Mayer v. Ramsey, 46 Tex. 371.

There was no determination of that issue on the trial; seemingly it was entirely overlooked.

No testimony was introduced which could serve as a basis for a determination of equities in defendant's favor arising from his acts in rebuilding the old fences.

For the errors noted above, the judgment of the trial court will be reversed and the cause will be remanded. But we will add that upon another trial, the defendant will have a right to any equities in his favor growing out of any claim he may make for valuable improvements upon Section 2861, by reason of his expenses in replacing the old fences with better ones; with the right also of the plaintiffs, in connection therewith, to an adjustment of any equities in their favor as an offset to the equities so claimed by the defendant; all such equities to be presented by proper pleadings.

Reversed and remanded.