**CHITTIM et ux. v. AULD.**

No. 11903.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 5, 1949.

Rehearing Denied Feb. 9, 1949.

Morriss, Morriss & Boatwright and Swearingen & Miller, all of San Antonio, for appellants.

Ross Powers, of Leakey, C. H. Gilmer, of Rocksprings, and Weatherby & Pollard, of Kerrville, for appellee.

MURRAY, Justice.

This suit in trespass to try title to 52.7 acres of land located in Real County, Texas, was instituted by William Auld against J. M. Chittim and wife, Thelma Chittim. The trial was before the court without the intervention of a jury and resulted in judgment for William Auld and against the Chittims, for the title and possession of the 52.7 acres of land. The Chittims were allowed the sum of $1,766.25, being the value of improvements placed in good faith upon the land, less the rental value of the land. The Chittims have appealed.

The Chittims and William Auld own adjoining ranches, the Chittim Ranch lying to the west of the Auld Ranch. This suit, in effect, has to do with the location of the boundary between these two ranches.

What is now known as the Chittim or Hoimes Ranch was, prior to 1893, owned by Captain Charles Schreiner, and what is now the Wm. Auld Ranch was, prior to 1893, owned by Mary Wilson, a feme sole. In that year Mary Wilson executed what is here referred to as a "fence deed" to Capt. Schreiner, whereby she conveyed to him a one-half interest in a fence described as, "Half interest in and to my wire fence which fence is built around my pasture on the Frio Water Hole in Kerr County, Texas, said fence is situated and runs along or near the line of Survey No. 23, * * * Survey No. 1817, * * * Survey No. 1, L.I.A.A., State Survey No. 172, * .* * State Survey No. 170, * * * giving and granting the said Charles Schreiner a full half interest in and to the above described fences." The deed further provides that Schreiner is to keep the fence up for the year 1893, Mary Wilson for the year 1894, and thereafter they shall alternate each year in keeping the fence in repair. The deed was signed and acknowledged by Mary Wilson.

In 1895 Capt. Schreiner, by the execution of two deeds, conveyed to Wm. P. W. Holmes seven surveys, including the south half of Survey No. 519. Under these deeds Holmes went into possession of what was afterwards known as the Holmes Ranch, and used, occupied and enjoyed the same, running sheep, goats and saddle horses thereon until the time of his death, which occurred in 1934. Wm. P. W. Holmes always claimed and occupied the land to this partnership fence, under a belief that his deeds called for the land to the partnership fence, including the 52.7 acre strip herein involved. The 52.7 acre strip was finally located by a survey made shortly before this suit was filed as being in Survey No. 1, referred to in the fence deed, and also as lying west of the partnership fence, or, in other words, as lying in the Holmes pasture. Wm. P. W. Holmes was in the peaceful, actual, open, notorious and pedal possession of this 52.7 acre strip from the time he went into possession of his ranch under the deeds from Capt. Schreiner in 1895, until the time of his death in 1934, under a belief that the strip had been conveyed to him by the Schreiner deeds.

The trial court's findings of fact No. 16 and No. 18, are as follows:

"16. It was not the intention of Wm. P. W. Holmes nor his heirs to claim the land in suit or any land that might be in the Holmes pasture, if it was not called for or covered by the deeds under which they held. It was the sentiment of Wm. P. W. Holmes never to claim or intend to claim anybody's land by limitation, and

the claim made to all the land to the east fence was under belief that it was included in his deed from Capt. Schreiner."

"18. The possession of the land in suit by Wm. P. W. Holmes and his heirs, was not adverse, there being no intention to claim the land if it was not included in their deeds."

We are of the opinion that the finding to the effect that Wm. P. W. Holmes did not intend to claim this land unless it was included in his deeds, and that he did not intend to claim it by limitation, is without support in the evidence. It is not shown that Wm. P. W. Holmes ever said or did anything that indicated that he was not claiming this 52.7 acre strip against the world. There is evidence that he thought it was his and that he thought that he had acquired it by his deeds and thought that the partnership fence along his east line was the true boundary line between his ranch and the Wilson or Wm. Auld Ranch. It is true that two of his sons testified, in effect, that in their opinion their father was the kind of a man who would not claim land by limitation and that he would not claim it unless it was covered by his deeds, but these opinions were expressed after the Holmeses had parted with all claim to this land, and long after the death of Wm. P. W. Holmes. The evidence is clear that Wm. P. W. Holmes during his lifetime did believe that this 52.7 acre strip was included within his deeds and that he did claim and enjoy it as his own until the time of his death, a period of some thirty-nine years. Whether he would have acted differently and have claimed differently if he had believed differently cannot be established by the opinion testimony of his two sons after his death and after the Holmeses had parted with the title and possession of this land. Panhandle & S. F. R. Co. v. Hoffman, Tex.Civ.App., 250 S.W. 246.

It is true, the evidence shows and the trial court found, by finding No. 17, that at other points of the outside boundaries Wm. P. W. Holmes made adjustments with adjoining owners, recovering lands outside of his enclosure and giving up land within his enclosure, but these ad-justments were made by mutual consent between other parties and related to other fence lines. He always claimed that the east fence was on the true boundary line and he always claimed to this east fence line. He may have claimed to this east fence because he felt that the fence deed established this fence as being a true boundary line, or he may have claimed the land because he thought it was covered by his deeds from Capt. Schreiner, but it matters not why he claimed it, the fact remains that he did claim it for about thirty-nine years, and died without ever renouncing his claim, either by act or word.

It is also clear that Wm. Auld considered this east fence to be on the true boundary line and did not have any idea that he owned land west of this partnership fence. His first suspicion to that effect arose in 1929, when they were surveying the Love land. We refer to it as a suspicion because the following year he erected a deer proof fence at great expense along the old line, thus fencing out the 52.7 acre strip. It was not until 1938, when the State Highway No. 483 was being surveyed that he definitely concluded that some of his land was in the Holmes pasture and that he wanted it. By that time Wm. P. W. Holmes had been dead for some four years. Thus it seems that for many years both owners were of the opinion that this fence was the true boundary between their respective ranches and that each owned only the land on his respective side of this partnership fence.

Appellee, William Auld, had set aside to him the western portion of Survey No. 1, L.I. & A.A., in a partition deed in 1920, and at that time he went into possession of that part of Survey No. 1, set aside to him, which is situated east of the partnership fence, but he had no idea that he owned any land west of that fence and he made no claim to any there located. It was not until 1929 that he began to suspicion that he might own land west of the partnership fence, and he was not convinced that a part of Survey No. 1, extended beyond the partition fence until in 1938. Appellee did not prove title to the sovereignty of the soil or to a common source, therefore, his only claim to.

the land is by prescription under the statutes of limitation. Art. 5507 et seq., Vernon's Ann.Civ.Stats.

We are of the opinion that Wm. P. W. Holmes under the undisputed evidence was in the actual, peaceful, adverse, open and notorious possession of the 52.7 acre strip in controversy, using, claiming and enjoying the same for some thirty-nine years, and that he thereby established limitation title to the same, and at his death this title passed to his heirs.

■ The facts are undisputed as to all material matters and while the trial court held that the possession by Wm. P. W. Holmes of this land was not adverse, this was a question of law under the undisputed evidence and not one of fact, and such legal conclusion is not binding upon this Court. In McLendon v. Comer, Tex. Civ.App., 200 S.W.2d 427, 430, it is stated: "where the facts are undisputed, it becomes a question of law for the court to determine as to whether limitation title has been ripened in the defendants, and is not an issue for the jury's determination."

■ The record shows that Wm. P. W. Holmes went into possession of the 52.7 acre strip in the year 1895, under the belief he had purchased it from Capt. Schreiner and that it was included in his deeds. He held actual, visible, pedal, open, notorious and peaceful possession of this land, occupying and claiming it as his own and using it for the only practical purpose for which it was adapted, that of grazing sheep, goats and horses, continuously, up until the time of his death in 1934. During all of that time no one questioned his title, and he never did or said anything to indicate that he was not claiming this land against the world. He did say at one time that he knew that his fence was not on the true line, but this conversation related to a different survey and did not relate to the land here in controversy. He always maintained that his east fence was upon the true line. Under such circumstances adverse possession will be presumed in the absence of something to explain or qualify such long, peaceful and continued actual and pedal possession.

■ In Lion Oil Refining Co. v. White, Tex.Civ.App., 138 S.W.2d 290, 292, it is said:

"Ordinarily, when a person in possession of land is shown to have used and enjoyed it as owners of lands usually do, the natural inference is that his possession was taken and held for himself as owner, and that it was 'therefore inconsistent with and hostile to the claim of another.' This inference prevails unless something else is shown to qualify and explain the possession."

■ Again, in Black v. Terry County, Tex.Civ.App., 183 S.W.2d 685, 688, it is said:

"Possession of land usually carries with it the presumption of claim of title, and such possession accompanied by the exercise of such rights as pertain to it is deemed sufficient evidence of an adverse claim. It is held by our courts that open, hostile, exclusive, and continuous appropriation of land for the prescriptive or limitation period carries with it a more decided conclusion that the appropriation of it was commenced and continued under a claim of right inconsistent with, and hostile to, the claim of another than direct testimony to that effect would be. It has long been the rule in this State that no deed or muniment of title is necessary to constitute a claim of right. The prescriptive or limitation period matures by virtue of the possession of the premises and its appropriation to uses to which it is placed by the possessor which are open, hostile, and adverse to the rights of the record owner. Craig v. Cartwright, 65 Tex. 413; Thompson v. Richardson, Tex.Com. App., 221 S.W. 952; Young v. City of Lubbock, Tex.Civ.App., 130 S.W.2d 418; Boy v. McDowell, Tex.Civ.App., 207 S.W. 937."

The fact that Wm. P. W. Holmes believed that this 52.7 acre strip was included in his deeds from Capt. Schreiner, when it was not, rather strengthens than weakens his claim thereto. We may be certain that he was claiming this land against the world, if he believed it was included in his deeds, and he died without ever learning anything to the contrary.

2 Tex.Jur. p. 125, § 65; Major v. Meyers, Tex.Civ.App., 111 S.W.2d 1184; McCabe v. Moore, Tex.Civ.App., 38 S.W.2d 641; Great Southern Life Ins. Co. v. Dodson, Tex.Civ.App., 155 S.W.2d 379; Wilburn v. Abercrombie, Tex.Civ.App., 125 S.W.2d 408; Catching v. Bogart, Tex.Civ.App., 138 S.W.2d 245. The trial court was in error in holding that Wm. P. W. Holmes' possession of this 52.7 acre strip, for some thirty-nine years, was not adverse.

■ Appellee, Wm. Auld, was the plaintiff below, J. M. Chittim and wife were the defendants below, and entered a plea of not guilty to appellee's trespass to try title action, thus the burden of proving title in himself was placed upon appellee. Durham v. Houston Oil Co., Tex. Com.App., 222 S.W. 161; Fulford v. Heath, Tex.Civ.App., 212 S.W.2d 649; 41 Tex.Jur. p. 492, § 30; Canon v. Scott, Tex.Civ.App., 217 S.W. 429; Griggs v. Montgomery, Tex.Civ.App., 22 S.W.2d 688.

■ Appellee was relying entirely upon title by limitation. He was admittedly never in the actual pedal possession of the 52.7 strip and laid no claim to it until the highway was surveyed in 1938. He only claims constructive possession by reason of the fact that he was awarded the western portion of Survey No. 1 in a deed of partition, and having gone into possession of a portion of said survey, that he was thereby placed in constructive possession of the 52.7 acre strip. We readily recognize the general rule of constructive possession relied upon by appellee, but there are two reasons why we think it does not apply here. First, there was this fence partitioning the two ranches, and appellee never even thought that any of his land was beyond this fence. He was actually only claiming to this fence. His first intimation that his deed called for land beyond this fence came in 1929, while surveying some land he was purchasing from one Love, and he never became convinced that he had land beyond the partition fence until 1938. 2 Tex.Jur. p. 176, § 93, note 10; Musgrove v. Foster Lumber Co., Tex. Civ.App., 89 S.W.2d 287. Secondly, the

52.7 acre strip was actually in the adverse possession of Wm. P. W. Holmes and the doctrine of constructive possession does not apply to land in the adverse possession of another. 1 Am.Jur. p. 796, § 10; 1 Am.Jur. p. 909, § 207, note 5. Any number of authorities are there cited, which we will not here take the space to copy. There are a number of authorities in this State.

■ In Panhandle & S. F. Ry. Co. v. Hoffman, Tex.Civ.App., 250 S.W. 246, 248, the court said:

"An examination of the record reveals the fact that the land in controversy is part of a much larger survey previously acquired by the company, but there is nothing to show that the company has ever made use of the tract in controversy. The roadbed was constructed upon another portion of the larger survey. An actual and visible appropriation of the land by an adverse claimant constitutes an ouster of the constructive possession of the owner. Ballard v. Perry's Adm'r, 28 Tex. 347."

Spencer v. Levy, Tex.Civ.App., 173 S.W. 550; 2 C.J.S., Adverse Possession, § 194, page 799; also § 196, page 800; Chase v. Eddy, 88 Vt. 235, 92 A. 99; McBurney v. Knox, 111 Tex. 510, 241 S.W. 1000; 2 C.J.S., Adverse Possession, § 183; Texas Land Co. v. Williams, 51 Tex. 51, 62; 2 Tex.Jur. p. 185, § 99, notes 7 and 8; Cook's Hereford Cattle Co. v. Barnhart, Tex.Civ. App., 147 S.W. 662; Walker v. Knox, Tex. Civ.App., 191 S.W. 730, rev. 111 Tex. 510, 241 S.W. 1000; Peden v. Crenshaw, 98 Tex. 365, 84 S.W. 362, reversing Tex.Civ. App., 81 S.W. 369; Woods v. Hull, 90 Tex. 228, 38 S.W. 165, 169, refusing writ of error to Hull v. Woods, Tex.Civ.App., 25 S.W. 458, on subsequent appeal 14 Tex.Civ. App. 590, 38 S.W. 256; Morris v. Jacks, Tex.Civ.App., 96 S.W. 637, writ of error refused 101 Tex. 650.

■ In Morris v. Jacks, supra, the court said:

"The question of law presented by the facts, the burden being upon the plaintiff to show title by limitation, not only against him who would, but for such title, be the true owner, is: Can he maintain his action against the defendant who shows the same

character of title? Logically, it would seem not. But the plaintiff contends that, having been in actual possession of 20 acres of land under deed duly recorded which included all the land in controversy, his possession extended constructively to all the land described in such deed, and defendant's subsequent possession of a part of the land he (plaintiff) was in such constructive possession of was ineffective as against his prior constructive possession. This contention is without foundation to support it. It is true that when one enters upon unoccupied land under a deed and holds adversely, his possession is construed to be coextensive with his deed or title, and the true owner will be deemed to be disseised to the extent of the boundaries described in the deed, although his possession beyond the limits of his actual occupancy is only constructive. But if the owner is at the same time in the actual possession of a part of the land, claiming title to the whole, he has the constructive possession of all land not in the actual possession of the intruder, and this, though the owner's actual possession is not within the limits of the deed under which the intruder claims. The reason for this is that both parties cannot be seised at the same time of the same land under different titles, and the law, therefore, holds all that is not in the actual occupancy of the adverse party to be in him who has the better title. But these principles apply only in cases between the owner and an intruder, and cannot be invoked by one intruder against another, as is sought to be done in this case.

"It is shown by the facts in this case that the possession and adverse claim of the defendant were prior to that of the plaintiff, while, as between them, it should be restricted to the land occupied and not extended by construction. This follows necessarily, for when defendant's possession ripened into title, as against the true owner he was entitled as against him to 160 acres, though his actual occupancy covered only a small part of the land. This quota, as is shown from the facts, can only be made by taking the land in controversy. The plaintiff, as against the true owner, is, by reason of his possession having ripened into title, also entitled to the 100 acres described in his deed, though he was only in actual possession of 20 acres. But, as both plaintiff and defendant could not be seised at the same time of the same land under their several claims of limitation, the title that one acquired against the true owner to the part he was not in actual possession of was absolutely destroyed by the same character of title acquired against the other. So, whatever may have been the rights of either party against the real owner, as between themselves neither acquired title to any of the land which was not in his actual possession. It, therefore necessarily follows that the question stated can only be answered in the negative."

It is true that Nevelle Holmes and Tom Holmes testified that their father, Wm. P. W. Holmes, would not claim land by limitation, and that he did not claim any land not in his surveys, but this testimony was given long after Wm. P. W. Holmes' death, and after the Holmeses had parted with all claims to this land, and was not shown to be based on anything other than the great esteem which they held for their deceased father. Such opinion evidence cannot overcome the legal presumptions of adverse claim arising from such long occupancy and uninterrupted use of this land by Wm. P. W. Holmes, as is shown by the facts in this case.

■ In Panhandle & S. F. Ry. Co. v. Hoffman, Tex.Civ.App., 250 S.W. 246, 247, the court said:

"Gerlach testified, inter alia, that it was two or three years ago that he first learned of the railway company's claim, and that he never recognized any title in the plaintiff, but said, in substance, that he would have turned the land over to the company if it had come to him after he bought the land, and told him that it belonged to the company. The appellant's first, fifth, and tenth propositions are that such statement, though made by the vendor after he has parted with title, defeats the claim of title by limitation asserted by subsequent purchasers. We are unable to concur in this view, especially so when the title has become vested after the lapse of the statutory period. Title by limitation is acquired when an adverse claimant has had peace-

able and adverse possession for the period fixed and in the manner defined by statute. The law gives effect to certain acts. The hostility of the possession is to be determined by what was done, and not by what might have been done, and certainly the title which defendant has perfected by limitation should not be divested by the subsequent expression of an opinion of the vendor after the latter has parted with his title. Bruce v. Washington, 80 Tex 368, 15 S.W. 1104; 2 C.J. 256, § 560."

The same thing is true of the conversation between J. M. Chittim and Wm. Auld, wherein Chittim stated that if Wm. Auld had land in his pasture he could have it. This conversation did not take place until 1938, by which time Chittim held this land by a good and sufficient legal title and he could not convey this land to Auld by these few spoken words. Pinchback v. Hockless, Tex.Civ.App., 137 S.W.2d 864.

There is still another reason why we feel that appellee cannot recover herein. Wm. Auld did not receive a deed giving him color of title to the 52.7 acre strip until 1920, by which time Wm. P. W. Holmes had been in peaceful and adverse possession of this land for some twenty-five years, which was more than twice the prescriptive period. Wm. P. W. Holmes had therefore acquired a full legal title to the 52.7 acre strip before Wm. Auld ever claimed constructive possession of the same. 2 C.J.S., Adverse Possession, § 199, note 80, page 803; Gibbs v. Lester, Tex. Com.App., 41 S.W.2d 28, 80 A.L.R. 431; Houston Oil Co. of Texas v. Patterson, Tex.Com.App., 222 S.W. 538; Houston Oil Co. of Texas v. Olive Sternenberg & Co., Tex.Com.App., 222 S.W. 534; Union Building & Loan Ass'n v. Pratt, Tex.Civ. App., 84 S.W.2d 781; Union Building & Loan Ass'n v. Jackson, Tex.Civ.App., 84 S.W.2d 784; Leonard v. Ramsey, Tex.Civ. App., 71 S.W.2d 606; Matthews v. Houston Oil Co., Tex.Civ.App., 299 S.W. 450; Gordon v. Gordon, Tex.Civ.App., 224 S.W. 716.

The doctrine of constructive possession does not apply against a person having a legal title and in peaceable and actual pedal possession of the land in dispute. 2 Tex.Jur. p. 190, § 103. In Evitts v. Roth, 61 Tex. 81, the Court said:

"While there may be a mixed possession of land, there can be no such a thing as a concurrence of seizin. For, as said in Whitehead v. Foley, 28 Tex. [268], 289, the legal title draws to the owner the seizin and possession, and he retains them until disseized by an actual possession taken and held by another."

Appellants contend that a boundary line was established between these two adjoining owners by the fence deed and the many years of acquiescence indulged in by the parties, which had the effect of recognizing this fence as an agreed boundary line between these two properties. Whether a boundary line has been established between adjoining owners by acquiescence is a question of fact and not one of law. Atascosa County v. Alderman, Tex.Civ.App., 91 S.W. 846; Parkinson v. Sears, Tex.Civ.App., 290 S.W. 556; Beal v. Earhart, Tex.Civ.App., 249 S.W. 1093; 7 Tex.Jur. p. 203, § 59. We see no reason to disturb the trial court's finding to the effect that the partnership fence was not an agreed boundary line.

In this case appellants and those under whom they claim are shown to have had prior possession of the land to any possession of appellee. In fact, appellee has alleged appellants to be in possession of the land, and appellee having failed to establish his title by a preponderance of the evidence, therefore, the appellants are entitled to a judgment decreeing the right of title and possession of the land. to be in them. 41 Tex.Jur. 499, § 33, note 16; Capital Building & Loan Ass'n v. Sosa, Tex.Civ.App., 72 S.W.2d 936.

The judgment of the trial court will be reversed and judgment here rendered that appellee take nothing and that appellants recover the title and possession of the 52.7 acre strip herein involved and that costs of both this and the trial court be adjudged against appellee.